382 So.2d 98 (1980)
Maybell HOLLEY, As Personal Representative of the Estate of Shirley Bryant, Deceased, Etc., Appellant,
v.
MT. ZION TERRACE APARTMENTS, INC., A Non-Profit Florida Corporation, Appellee.
Nos. 79-1082, 79-1436.
District Court of Appeal of Florida, Third District.
March 25, 1980.
Rehearing Denied April 22, 1980.
*99 Greene & Cooper and Joan M. Bolotin, Stanley M. Rosenblatt, Miami, for appellant.
Walton, Lantaff, Schroeder & Carson, and Gill S. Ullman, Miami, for appellee.
Before HENDRY and SCHWARTZ, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
SCHWARTZ, Judge.
On May 31, 1976, the plaintiff-appellant's decedent, Shirley Bryant, was raped and murdered while a tenant in the defendant-appellee's apartment complex. The crime was committed by an intruder, thought to have been a co-tenant, who apparently gained access into Ms. Bryant's second story apartment through a window which fronted onto a common outside walkway. The basis of the plaintiff's wrongful death action against the landlord was its allegedly negligent failure to provide reasonable security measures in the building's common areas. The trial judge entered summary judgment for the defendant and the plaintiff has taken this appeal. We reverse.
The Mt. Zion Terrace Apartments consists of twelve separate two-story buildings with over 130 apartments in all. It is located in the heavily populated Opa-Locka-Carol City area of Dade County. For a long period prior to the tragedy involved in this case, the complex had been plagued by the high incidence of serious crime which is unfortunately all too characteristic of our urban society. In the calendar year immediately before the murder, it had been the scene of no less than twenty "class one" crimes, those involving violence, which were reported to the police. Of these, there were six cases of violent assaults and seven in which apartments in the project were burglarized.[1] The record shows that the landlord had itself recognized the dangerous nature of its premises in at least two ways. First, it would accept no cash at its office in the complex and took only checks or money orders in rental payments. Second, and far more importantly, Mt. Zion had in the past taken significant steps, which had been abandoned by the time that Ms. Bryant was killed, to safeguard the security of its apartments. Between 1972 and 1974 (Ms. Bryant moved in during 1973), it hired uniformed armed guards to patrol and protect the complex. During these years, the landlord had charged each tenant an additional five dollars a month for this service. Although the Federal Housing Administration put a stop to the practice, there is an unresolved indication in the record that the charge was thereafter added to and included in the rent. Notwithstanding the guard service was terminated. In 1974, Mt. Zion spent $4,924 for security; in 1975, $1,113; in 1976, the year of the murder, nothing.
On these facts, we hold that the defendant failed to carry its required burden to demonstrate conclusively that it was not liable for Ms. Bryant's death. See Holl v. Talcott, 191 So.2d 40 (Fla. 1966). Particularly in view of the evidence concerning the past record, and therefore the future foreseeability of violent crime at its premises, a jury could properly find that a discharge of the landlord's duty to keep the common areas reasonably safe[2] required that a guard or other security measures[3] be provided *100 at the complex, in order to prevent just such a tragic incident as the one involved in this case. Without repeating the extensive legal analyses they contain, we approve and follow those cases in other jurisdictions which have recognized such potential liability in similar circumstances. E.g., Kline v. 1500 Massachusetts Avenue Apartment Corp., 141 U.S.App.D.C. 370, 439 F.2d 477 (D.C. Cir.1970); O'Hara v. Western Seven Trees Corp. Intercoast, 75 Cal. App.3d 798, 142 Cal. Rptr. 487 (1977); Ramsay v. Morrissette, 252 A.2d 509 (D.C. 1969); Smith v. General Apartment Co., 133 Ga. App. 927, 213 S.E.2d 74 (1975); Stribling v. Chicago Housing Authority, 34 Ill. App.3d 551, 340 N.E.2d 47 (1975); Johnston v. Harris, 387 Mich. 569, 198 N.W.2d 409 (1972); Braitman v. Overlook Terrace Corp., 132 N.J. Super. 51, 332 A.2d 212 (1974), aff'd, 68 N.J. 368, 346 A.2d 76 (1975); Sherman v. Concourse Realty Corp., 47 A.D.2d 134, 365 N.Y.S.2d 239 (1975); see also, Annot., 43 A.L.R.3d 331 (1972)[4] This holding is in accordance with our recent decision in Sachs v. Midway Development Corp., 373 So.2d 953 (Fla.3d DCA 1979). It is supported also by several Florida decisions which, in analogous factual and legal settings, likewise hold that one may be liable for failing to protect another from the results of reasonably foreseeable criminal conduct. Werndli v. Greyhound Corp., 365 So.2d 177 (Fla.2d DCA 1978); Rosier v. Gainesville Inns Associates, 347 So.2d 1100 (Fla.1st DCA 1977); Rotbart v. Jordan Marsh Co., 305 So.2d 255 (Fla.3d DCA 1974); Cooper v. IBI Security Service of Florida, Inc., 281 So.2d 524 (Fla.3d DCA 1973), cert. denied, 287 So.2d 95 (Fla. 1973); Homan v. Dade County, 248 So.2d 235 (Fla.3d DCA 1971); Florida East Coast R. Co. v. Booth, 148 So.2d 536 (Fla.3d DCA 1963), cert. denied, 155 So.2d 551 (Fla. 1963); see also Hernandez v. Motrico, Inc., 370 So.2d 836 (Fla.3d DCA 1979); Angell v. F. Avanzini Lumber Co., 363 So.2d 571 (Fla.2d DCA 1978); Sparks v. Ober, 192 So.2d 81 (Fla.3d DCA 1966); compare Drake v. Sun Bank & Trust Co. of St. Petersburg, 377 So.2d 1013 (Fla.2d DCA 1979), in which the court based its holding of non-liability solely upon the absence of allegations that the criminal attack was reasonably foreseeable. Furthermore, two particular features of this case make the plaintiff's position even more convincing than in most, if not all, of the prior precedents:
(a) Mt. Zion's prior practice of providing armed guards constitutes an admissible indication of the defendant's own "knowledge of the risk and the precautions necessary to meet it." W. Prosser, Law of Torts, § 33 at 168 (4th ed. 1971); and
(b) The showing that part of Ms. Bryant's rent may have been expressly for security creates a genuine issue concerning the landlord's contractual responsibility to provide that protection. See Cooper v. IBI Security Service of Florida, Inc., supra.
Apart from its contention that, as a matter of law, it had no duty to provide protection against criminal conduct, see note 4, supra, the landlord makes several other arguments in support of the summary judgment below. We find none of them persuasive. Mt. Zion suggests, for example, that it would be economically unfeasible and practicably impossible to provide effective security for each tenant in its sprawling, low-income project. We believe, however, that this contention, which essentially concerns the balancing of the risks involved against the expenses required to obviate them, may appropriately be made only to the trier of fact. Under our system, it is peculiarly a jury function to determine what precautions are reasonably required in *101 the exercise of a particular duty of due care. E.g., Russell v. Jacksonville Gas Corp., 117 So.2d 29 (Fla.1st DCA 1960), and cases cited. That rule is plainly applicable to this situation.
Mt. Zion has also advanced three separate but conceptually interrelated arguments which are all based on the claim that any arguable breach of duty on its part was not a "proximate" cause of Ms. Bryant's death.
(1) We first reject, as entirely fallacious, the defendant's claim that the brutal and deliberate act of the rapist-murderer constituted an "independent intervening cause" which served to insulate it from liability. It is well-established that if the reasonable possibility of the intervention, criminal or otherwise, of a third party is the avoidable risk of harm which itself causes one to be deemed negligent, the occurrence of that very conduct cannot be a superseding cause of a subsequent misadventure. As is said in Restatement (Second) of Torts § 449 (1965):
If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby. [e.s.]
Comment b to this section states:
The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity.
See also W. Prosser, Torts, supra, § 44, at 275, nn. 20-21. The application of this principle to the case at bar is obvious. Since Mt. Zion is liable, if at all, only for failing to protect its tenant from a criminal attack, it cannot escape responsibility because the attack has actually taken place. See also Schwartz v. American Home Assurance Co., 360 So.2d 383 (Fla. 1978); Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54 (Fla. 1977); Cooper v. IBI Security Systems, Inc., supra.
(2) Moreover, contrary to its contention, Mt. Zion's potential liability is not foreclosed by the fact that the assault and murder did not take place in a common area it had the duty to maintain, but rather inside Ms. Bryant's apartment. The basis of the plaintiff's case is the almost undisputed fact that the intruder could have entered the apartment only through the common walkway adjacent to the decedent's window. Since this is true, it was for the jury to determine whether the defendant's alleged breach of duty as to the areas outside the apartment was a legal cause of what happened inside. Many of the cases specifically so hold. Thus, in O'Hara v. Western Seven Trees Corp. Intercoast Management, supra, it is said at 142 Cal. Rptr. at 490:
Respondents contend that the fact the assault took place inside appellant's apartment should absolve them, since she, not they, had control over that area. This fact is not determinative. Failure to take reasonable precautions to safeguard the common areas under respondents' control could have contributed substantially, as alleged, to appellant's injuries. (See Kline v. 1500 Massachusetts Avenue Apartment Corp., supra, 141 U.S.App. D.C. 370, 373, 439 F.2d 477, 480.)
Accord, Ramsay v. Morrissette, supra; Smith v. General Apartment Co., supra; Warner v. Arnold, 133 Ga. App. 174, 210 S.E.2d 350 (1974); see also Rosier v. Gainesville Inns Associates, supra.
(3) It is lastly argued that, because the assailant was probably a co-tenant of the complex, nothing Mt. Zion could reasonably have done would have prevented this tragedy. We find, to the contrary, that the defendant did not affirmatively show either that the murderer would not have been seen and stopped from entering the apartment *102 if reasonable security had been present; or that the crime would not even have been attempted in the face of the deterrent effect of such protection. The summary judgment may not therefore be upheld on this ground. See Hernandez v. Clinica Pasteur, Inc., 293 So.2d 747 (Fla.3d DCA 1974).
For these reasons, the judgment under review is reversed and the cause remanded for further consistent proceedings.[5]
Reversed and remanded.
VANN, HAROLD R. (Ret.), Associate Judge, dissents.
NOTES
[1] These figures of course do not include unreported crimes or those which occurred only in the neighborhood of the complex.
[2] Butler v. Maney, 146 Fla. 33, 200 So. 226 (1941); Hester v. Guarino, 251 So.2d 563 (Fla.3d DCA 1971), cert. denied, 259 So.2d 715 (Fla. 1972).
[3] The plaintiff's appellate presentation includes extensive references to the defendant's alleged failure properly to light the area in question. We have not considered this ground of asserted liability, however, because there is no mention of this issue either in the complaint or in any part of the record below. We do not pass upon the propriety of any amendment to the pleadings, to reflect this claim, which may be proposed after remand.
[4] We find the contrary decisions relied upon by the landlord, see, e.g., Martin v. Usher, 55 Ill. App.3d 409, 13 Ill.Dec. 374, 371 N.E.2d 69 (1977); Goldberg v. Housing Authority of Newark, 38 N.J. 578, 186 A.2d 291 (1962); Gulf Reston, Inc. v. Rogers, 215 Va. 155, 207 S.E.2d 841 (1974) to be factually inapposite, legally unpersuasive, or both.
[5] We emphasize that the extent of our holding is that summary judgment was inappropriately entered. We intimate no view as to the proper ultimate outcome of the case, or even upon the plaintiff's ability to withstand a motion for directed verdict at the trial.