394 So.2d 506 (1981)
Barbara WHELAN, Individually and As Mother and Natural Guardian of Jason Whelan, a Minor, On Behalf of Barbara Whelan and Jason Whelan, a Minor, Appellants,
v.
DACOMA ENTERPRISES, INC., a Foreign Corporation, Ronald Stewart, Judith Stewart, Norma Poole, Stanley Poole, Michael Glantz and Gretchen Glantz d/b/a St. John's Village, II, Ltd., and Commerce & Industry Insurance Company, an Insurance Corporation, Appellees.
No. 78-1285/NT4-91.
District Court of Appeal of Florida, Fifth District.
February 18, 1981.
*507 Elizabeth J. Gulden of Blackburn, Gibson & Gulden, Orlando, for appellants.
A. Craig Cameron of Gosney, Cameron & Parsons, Daytona Beach, for appellees.
LETTS, GAVIN K., Associate Judge.
At issue here is the extent of a landlord's liability for criminal violence perpetrated against a tenant by a third party who is not an employee, agent or representative of the landlord. The trial judge granted a motion to dismiss the tenant's fourth amended complaint with prejudice because there is "no legal precedent either at common law, by case law, or through statute for the allowance of [such] a cause of action ..." We disagree and reverse.
The complaint alleged that an assailant forced entrance into the tenant's locked apartment, and raped and assaulted her in the presence of her young son who was also assaulted and battered. It was further alleged that the tenant and her son were lessees,[1] tenants and business invitees upon the premises in question; that the landlord knew, or should have known that for a long period of time prior to this outrage there had been numerous incidents of criminal activity on the premises, including burglaries, breakings and enterings of the dwelling units, and numerous violent crimes against persons occurring both inside and outside the individual units. It is then alleged, inter alia, that the landlord owed the tenant a duty to use ordinary and reasonable care to provide security by furnishing safely constructed doors and reasonably safe locks. The landlord, so it is alleged, undertook to control the security system by forbidding the installation of any locks on the exterior apartment door without the explicit consent of the landlord. Thus, it is alleged that the landlord was in control and responsible for the types and number of locking devices on the doors of the individual dwelling units. Notwithstanding that duty, and in breach thereof, it is alleged that the assailant was able to gain entry into the tenant's apartment due to unsatisfactory defective and ineffective locks on the exterior apartment door and/or because of the existence of unlimited passkeys.
There is a dearth of Florida law on this subject, but we agree with the trial judge that a landlord should not normally be held responsible for criminal acts committed by strangers and generally is not an insurer of, and has no duty to protect, the safety of his tenants, 43 A.L.R.3d 331 et seq. at 335. Were we to hold otherwise, each victimized tenant would sue his landlord every time a rape, murder, assault, arson, robbery or burglary occurred on or about any leased premises, be they single, multi-family or commercial.
*508 There is very little said in the complaint about the actual relationship of the parties. In paragraph two it is alleged that "the Plaintiff, BARBARA WHELAN, resided at ... St. Johns Village." In paragraph three it is alleged that the defendants, a corporation and five individuals, were "operating" St. Johns Village. In paragraph four it is alleged that the plaintiffs were lessees, tenants and business invitees on the premises of St. Johns Village. From such allegations it is difficult to tie down the exact status of the parties and their relationships and it becomes important to note what this complaint does not allege. For instance there is no allegation of a violation of a statute such as the landlord-tenant laws. We further observe no allegation as to any violation or breach of a lease for a term certain,[2] nor is one attached to the complaint. Moreover, there is no allegation of a violation of any implied contract arising out of the relationship of landlord and tenant.
We are not unaware of the recent decision out of the Third District written by Judge Schwartz. Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla.3d DCA 1980). In Holley there is a specific reference to a "contractual responsibility" to provide armed guards arising out of an apportionment of the rental payment for this very purpose. There is no such allegation in the case now before us and we find this to be a vital distinction.
Nor do we construe Drake v. Sun Bank & Trust Co., etc., 377 So.2d 1013 (Fla.2d DCA 1979) to be contrary to our conclusion. In fact we see it as supportive thereof although some of the dicta might indicate otherwise. We also note a recent decision from the Supreme Court of Illinois, Pippin v. Chicago Housing Authority, 78 Ill.2d 204, 35 Ill.Dec. 530, 399 N.E.2d 596 (1979).[3]
Nonetheless, because the allegations in sum appear to support the presence of actual latent defects in the existing lock, keys and bolt mechanism unknown to the tenant, and known to the landlord, we conclude that the complaint stated a cause of action in this regard grounded in negligence. See Butler v. Maney, 146 Fla. 33, 200 So. 226 (1941); Mansur v. Eubanks, 368 So.2d 645 (Fla.1st DCA 1979). The landlord's brief repeatedly alludes to the fact that the tenant had been offered a dead bolt lock at reasonable cost and this, as well as other circumstances, may well later support a motion for summary judgment. However, such allusions are impertinent to any examination of the complaint.
This cause is reversed in accordance herewith.
REVERSED AND REMANDED.
DOWNEY, JAMES C., Associate Judge, concurs.
BERANEK, JOHN R., Associate Judge, dissents with opinion.
BERANEK, JOHN R., Associate Judge, dissenting.
In addition to the elements of the cause of action noted in the majority opinion, I would also require that there be a substantial breach of the contractual duties assumed by the landlord under the lease and that the plaintiff's injuries be caused by this breach. I would further require that such injuries be reasonably foreseeable to the landlord under all of the circumstances.
I believe the cause of action asserted here is not purely in tort. The entire relationship between the parties and all of their rights and duties may be substantially altered and changed by what they voluntarily choose to contract for in the lease. I submit it is an oversimplification to consider in the abstract whether the landlord exercised reasonable care to protect plaintiff from criminals. The first inquiry should be to *509 determine what the landlord agreed to (expressed or implied) in the lease. In the present case, there are no allegations as to the existence of a lease nor as to any of its terms or a breach thereof. I would hold the absence of such allegations fatal to the plaintiff's claim. Unfortunately, crime is a reality in our society today, and landlords should not be singled out to bear a special responsibility for it.
NOTES
[1] No written lease is attached to the complaint and we assume there is none.
[2] Other than the bald statement that the tenant was a lessee, tenant and business invitee.
[3] The Pippin case also noted that the statutory language calling for the landlord to provide "decent, safe and sanitary dwellings" should not be construed to require protection against criminal activity, Id., 35 Ill.Dec. at 533, 399 N.E.2d at 599 [see § 83.51, Fla. Stat. (1979) for comparison] and grounded its holding on a contractual agreement to provide guard services.