432 So.2d 86 (1983)
The GREEN COMPANIES, a Corporation, and Allstate Insurance Company, a Foreign Corporation, Appellants,
v.
Nicholas DIVINCENZO and Mary Jane Divincenzo, His Wife, Appellees.
No. 80-1622.
District Court of Appeal of Florida, Third District.
April 19, 1983.
Rehearing Denied June 15, 1983.
Underwood, Gillis, Karcher, Reinert & Valle and Anthony Reinert, Miami, for appellants.
Horton, Perse & Ginsberg and Arnold R. Ginsberg, Colson & Hicks, Miami, for appellees.
*87 Before DANIEL S. PEARSON and FERGUSON, JJ., and PEARSON, TILLMAN (Ret.), Associate Judge.
PER CURIAM.
Plaintiff Nicholas DiVincenzo was a tenant in an office complex known as Dadeland Towers. On June 23, 1976, sometime after 6:00 p.m., DiVincenzo was seriously injured by an unknown assailant while working at his Dadeland Towers office. Just prior to the assault, he had left his office unattended, with the door unlocked, in order to go across the hall to the bathroom. Upon returning to his office, he was brutally attacked and left with substantial permanent injuries.
In 1972, when Mr. DiVincenzo, a real estate broker, first rented one of the forty-nine offices in the seven-story 9300 Building at Dadeland Towers, there was a security guard stationed at the main entrance to the building from 4:00 p.m. until 11:00 p.m. The guard locked the doors at 5:00 p.m.
About two years later, these security procedures changed: the guard was removed; the doors were not locked until 7:00 p.m.; a camera, activated and monitored from a separate building after 7:00 p.m., was positioned at the rear entranceway; the rear entranceway was equipped with an electronic lock and buzzer to allow entry at night.
DiVincenzo and his wife, Mary Jane, brought suit against The Green Companies, the owner of the office complex, and its insurer, Allstate Insurance Company, alleging (i) a landlord-tenant relationship, (ii) the unusually high crime rate in the vicinity of the office complex, (iii) the landlord's knowledge of the situation, (iv) the duty owed by the landlord to DiVincenzo to institute procedures to make and keep the premises reasonably safe for occupancy and (v) the consequent injuries to DiVincenzo as a result of the landlord's failure to perform that duty. Following a jury trial, a verdict was returned finding The Green Companies' negligence to have contributed 75% to the plaintiff's injuries, and the plaintiff's own negligence to have contributed 25% to his injuries. Judgment was thereupon entered in accordance with the verdict.
The defendants, the landlord and its insurer, bring this appeal, and the plaintiffs cross-appeal.
The defendants have presented four points on appeal. The first claims error due to the denial of the defendants' motion for a directed verdict. The thrust of the argument on this point is that the evidence before the court was not sufficient to establish the defendants' liability for a criminal attack by a third person. Our review of the record shows that the evidence was sufficient to meet the test applied by this court in Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla. 3d DCA 1980), where we held:
Particularly in view of the evidence concerning the past record, and therefore the future foreseeability of violent crime at its premises, a jury could properly find that a discharge of the landlord's duty to keep the common areas reasonably safe required that a guard or other security measures be provided at the complex, in order to prevent just such a tragic incident as the one involved in this case. [Footnotes omitted.]
* * * * * *
This holding is in accordance with our recent decision in Sachs v. Midway Development Corp., 373 So.2d 953 (Fla.3d DCA 1979). It is supported also by several Florida decisions which, in analogous factual and legal settings, likewise hold that one may be liable for failing to protect another from the results of reasonably foreseeable criminal conduct. [Case citations omitted.] 382 So.2d at 99-100.
In the present case, there was adequate proof of a dangerous condition which was known, or should have been known, to the defendant owner, and there was proof of a relaxing of security conditions when the owner changed to a less effective security system. It is a question for the jury to determine whether reasonable care required that the stricter security precautions previously taken should have been in effect on *88 the evening of the attack. See Orlando Executive Park, Inc. v. Robbins, ___ So.2d ___ (Fla. 1983) (Case Nos. 61,165 & 61,166, opinion filed March 31, 1983) [8 FLW 134]; Ten Associates v. McCutchen, 398 So.2d 860 (Fla. 3d DCA 1981), rev. denied, 411 So.2d 384 (Fla. 1981); Winn-Dixie Stores, Inc. v. Johstoneaux, 395 So.2d 599 (Fla.3d DCA 1981), rev. denied, 402 So.2d 614 (Fla. 1981). This conclusion does not, in our opinion, depart from the holding in Relyea v. State, 385 So.2d 1378 (Fla. 4th DCA 1980), heavily relied upon by the defendants. The Relyea court pointed out that where the landowner has actual or constructive knowledge of prior, similar acts committed in the area upon invitees, a duty would thereby arise for the landowner to take measures to protect his invitees.
The evidence here showed that the owner in fact foresaw  not should have foreseen  the likelihood of harm, took certain steps calculated to guard against it, and thereafter determined to abandon those steps, although the recognized likelihood of harm had not diminished. We certainly cannot conclude from the facts of the present case that the burden on the owner to protect its tenants from after-hours assault outweighed, as a matter of law, the likelihood of such an assault occurring. Indeed, the very precautions once taken by the owner, and maintained for several years, amply evidences that this undertaking was not unreasonably burdensome.[1]
The defendants' second point urges error in the admission into evidence of a computer printout of police records of reported crimes in the area. We hold that this evidence was competent and admissible. See, e.g., Monarch Federal Savings & Loan Association v. Genser, 156 N.J. Super. 107, 383 A.2d 475 (1977), and the cases cited therein. The third point urges error in the sustaining of an objection to a question propounded by the defendants' counsel to the plaintiffs' expert witness on security.[2] If error was committed, it was harmless. See Warning Safety Lights, Inc. v. Gallor, 346 So.2d 92 (Fla. 3d DCA 1977), cert. denied, 355 So.2d 518 (Fla. 1978). This is especially true in view of the competent evidence which had already been presented on the subject. Finally, the defendants urge that the verdict was excessive. A party who assails the amount of a verdict as being excessive, has the burden of showing it is unsupported by the evidence, or that the jury was influenced by passion or prejudice. Wackenhut Corporation v. Canty, 359 So.2d 430 (Fla. 1978). There is record evidence of serious injury, pain and mental anguish; there is also evidence that plaintiff will incur substantial expenses for future medical care. There is no showing that the amount of the award  $562,500 after reduction by the percentage of negligence charged to plaintiff  exceeds the maximum limit of the reasonable range within which a jury may operate. Bould v. Touchette, 349 So.2d 1181 (Fla. 1977).
On cross appeal, the plaintiffs argue that there was no evidence upon which the trial court could properly have denied their motion for a directed verdict on the issue of the injured plaintiff's comparative negligence. We hold that this contention is groundless in view of the fact that the plaintiff was attacked in his own office, which he had left unlocked and unattended.
No reversible error having been shown either by the appeal or the cross-appeal, the judgment is hereby AFFIRMED.
*89 PEARSON, TILLMAN, J. (Ret.), Associate Judge, dissenting.
In my view, this decision improperly extends the rule for liability laid down by this court in Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla.3d DCA 1980), from a rule applicable to a large apartment complex of some 130 apartment units to a rule applicable to all types of rental units and, in particular, to an office complex where no one lives. In Holley, which involved the reversal of a summary judgment for the landlord, the possibility of applying the rule of liability was predicated upon a rape-murder which was preceded by some twenty other reported occurrences of violent crimes in the same complex during the prior calendar year.
By contrast, the present case fixes liability for a brutal assault upon the tenant of an office complex in which, so far as the record shows, there had never been a prior violent crime. The "dangerous condition" element is supplied by evidence of criminal acts in the adjacent Dadeland Shopping Center area. The reasonableness of such an extension of the rule of liability in Holley is doubtful at a time when the center of almost every city is a high crime area. The duty of the owners of commercial buildings to police their premises is properly a matter of contract. Any extension of the rule of liability is, I think, an invasion of the legislative field.
Rather than undertake an exposition of authorities for this view, I think it sufficient to state that I would follow the conclusion reached by Judge Grimes in Drake v. Sun Bank & Trust Co. of St. Petersburg, 377 So.2d 1013 (Fla. 2d DCA 1979), where it was held that "[i]n any event, liability will exist only where the likelihood of the misconduct and the unreasonable risk of it outweighs the burden of protecting against it." The application of this test to the present case would call for a holding that the defendants' motion for a directed verdict should have been granted.
I respectfully dissent.
NOTES
[1] Although it would be unreasonable to expect a municipal housing authority to protect vendors from criminal attacks perpetrated on the premises of a large housing authority, Goldberg v. Housing Authority of Newark, 38 N.J. 578, 186 A.2d 291 (1962), a landlord may be liable if he carelessly enables a thief to gain entrance to the apartment of a tenant. McCappin v. Park Capitol Corp., 42 N.J. Super. 169, 126 A.2d 51 (1956).
[2] During cross-examination, the defendants' counsel asked the plaintiffs' expert on security:

In your deposition I believe you also stated that you found no crimes of physical assault in the complex itself, the Dadeland Towers Complex.
The plaintiffs' counsel objected:
I object on the grounds that the record in this case speaks for itself. Anything he would give us would be just hearsay.
The court sustained the objection.