472 So.2d 1210 (1985)
Polly Suzanne PATERSON, Appellant,
v.
Kent C. DEEB, Transamerica Insurance Co., W. Fenton Langston, and Hartford Accident & Indemnity Co., Appellees.
No. AY-8.
District Court of Appeal of Florida, First District.
June 12, 1985.
Rehearing Denied July 22, 1985.
Rehearing Denied August 14, 1985.
*1212 Michael T. Callahan, of Brooks, Callahan & Phillips, Tallahassee, for appellant.
Fred M. Johnson and Patricia Guilday, of Fuller & Johnson, Tallahassee, for appellee Deeb.
Charles A. Stampelos, William B. Wiley, and Eugene L. Ciotoli, of McFarlain, Bobo, Sternstein, Wiley & Cassedy, P.A., Tallahassee, for appellees Langston and Hartford Acc. & Indem. Co.
ZEHMER, Judge.
Appellant, Polly Suzanne Paterson, sued appellees, Kent C. Deeb and W. Fenton Langston, as owners of an apartment leased by plaintiff, for compensatory and punitive damages resulting from an unknown assailant's sexual attack upon her in the leased premises. She appeals the lower court's judgment dismissing her amended complaint with prejudice for failure to state a cause of action. We reverse.
*1213 Plaintiff was offered and exercised several opportunities to amend her original complaint. The final amended complaint, construed most favorably for the plaintiff, alleges the following essential facts.
In August 1981 plaintiff leased an apartment from defendants under a one-year lease. In September 1982 she renewed the lease for one year and continued to reside in the apartment. At that time she executed a written agreement, which was retained by the defendants' rental agent. Despite plaintiff's request, a copy of the lease agreement has not been given to her.
The leased premises was an old building on East Park Avenue in Tallahassee containing three apartment units. Plaintiff's apartment comprised the entire upstairs of the building. The other two apartments were located on the first floor. Access to the apartments was through a common hallway with entrances at the front and the rear of the building. A stairwell from the downstairs hallway to an upstairs hallway provided access to plaintiff's apartment. Plaintiff's bathroom was across the hall from her living and bedroom quarters. The hallways and stairwell were common areas under the sole control of defendants and were poorly lighted.
Subsequent to plaintiff's renewal in September 1982, she told defendants' rental agent she feared for her personal safety in the building because of its lack of security. She specifically complained that the only lock to the front door of the building was broken and that the rear door of the building had no lock or other security device. The plaintiff further complained to defendants' rental agent that although one of the downstairs apartments had been vacant for some time nothing had been done to secure the open windows and doors in that unit and that from time to time trespassers came into the building and used that unit after dark. These windows and doors gave trespassers unrestricted access to the interior common areas of the building. Thereafter, plaintiff further complained to defendants' agent that window screens were still missing and that windows had not been repaired so they could be secured. Defendants' rental agent discussed plaintiff's requests with defendants and informed plaintiff that her requests for repairs and improved security would not be met because the building was to be demolished and improvements were impractical as a waste of money to defendants.
On the evening of January 10, 1983, plaintiff crossed the upstairs hall and entered her bathroom. An unknown assailant, hidden behind the unlocked bathroom door, grabbed the plaintiff from behind, threatened her at knifepoint, bound her hands, face, and mouth, battered her, and forcibly raped her at knifepoint within the confines of her bathroom.
Plaintiff alleges that defendants knew or should have known that between 1979 and 1982 the neighborhood in which the apartment was located experienced a substantial number of reported breaking and entering offenses and criminal assaults, and that from 1976 to 1982 the number of sexual assaults experienced in that neighborhood police district was significantly higher than the average for other reporting districts in Tallahassee; that defendants owed a common law and statutory duty to plaintiff to maintain the doors, locks, keys, and common areas of the apartment building in a reasonably safe condition, including minimal measures to secure the area against foreseeable criminal misconduct against plaintiff, a single woman living alone; that section 83.51, Florida Statutes (1981), in effect at the time the lease was made, required that defendants provide locks and keys for the doors of the building and otherwise maintain the common areas in a clean and safe condition, that the statute was designed to protect the class of persons of which plaintiff was a member, and that plaintiff suffered an injury of the type the statute was designed to prevent.
The amended complaint alleges that defendants breached the above duties in the following respects: (a) Not keeping the common areas of the building safe for use by the female plaintiff by failing and refusing to install or repair locks on the front *1214 and back doors leading to the common areas of the building and by failing to adequately light such common areas; (b) not providing a security lock for the outside of plaintiff's bathroom door, the sole access to which was through a common area of the building; (c) failing to take adequate measures to lock and secure the vacant living unit downstairs, which afforded access to the interior common areas and to plaintiff's apartment by trespassers and others intent on harming plaintiff; (d) violating the statutory duty imposed by section 83.51, Florida Statutes (1981), which requires that reasonable provisions be made for locks and keys and for the safe condition of all common areas of the building; (e) failing to exercise reasonable care to correct the dangerous and defective conditions of the doors, windows, and passageways of the building upon receiving notice of their existence from plaintiff; and (f) breaching their implied contract with plaintiff to provide a reasonably safe dwelling unit of common areas, windows, and doors secure enough to prevent ready access by persons intent upon reasonably foreseeable criminal misconduct likely to result in harm to the plaintiff. The amended complaint also joins the liability insurers as defendants and claims compensatory and punitive damages.[1]
Defendants moved to dismiss the amended complaint on grounds that it failed to allege ultimate facts showing: That the alleged criminal activity was a reasonably foreseeable occurrence at the apartment premises; that defendants had any legal duty to protect plaintiff against the alleged criminal activity; that the alleged negligence was a legal cause of plaintiff's injuries; and that defendants were liable for punitive damages. The trial court held the allegations legally insufficient to allege the requisite foreseeability. It also found the facts insufficient to sustain the punitive damages claim.
Two questions are presented for our consideration: (1) Whether the allegations were sufficient to allege a cause of action for negligence; (2) Whether the allegations were sufficient to state a claim for punitive damages. We answer each question in the affirmative.
The four elements of negligence are (1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) an injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of the injury. In general, the landlord's duty is to exercise reasonable care to maintain the premises in a reasonably safe condition. The issue of foreseeability said to be lacking in this case of criminal attack relates to the elements of duty and causation. See, e.g., Ten Associates v. McCutchen, 398 So.2d 860 (Fla. 3d DCA 1981).
As a general rule, a landowner has no duty to protect an invitee on his premises from criminal attack by a person over whom the landowner has no control unless the criminal attack is reasonably foreseeable. E.g., Relyea v. State, 385 So.2d 1378 (Fla. 4th DCA 1980); Admiral's Port Condominium Assn., Inc. v. Feldman, 426 So.2d 1054 (Fla. 3d DCA 1983); Highlands Insurance Co. v. Gilday, 398 So.2d 834 (Fla. 4th DCA 1981). It has also been said that, to impose such a duty upon the landowner, the invitee must allege and prove that the landowner had actual or constructive knowledge of prior similar acts committed upon invitees on the premises because a landowner should not be required to take precautions against a sudden attack which the landowner has no reason to anticipate. *1215 Relyea v. State, 385 So.2d at 1383. Thus, it appears that the foreseeability of criminal attack is essential to the concept of duty only in the sense that in the absence of another basis for imposing a legal duty the law does not require one to perform a specific act where that person has no knowledge or reason to know that such act is reasonably necessary to protect invitees on the premises.
Because there are often additional considerations incident to the contractual and statutory obligations found in the usual landlord/tenant relationship, we do not perceive the foreseeability premise of the general rule governing landowner/invitee liability to be the exclusive basis for the landlord's liability to the tenant regarding criminal attacks committed on the leased premises. See Kline v. 1500 Massachusetts Avenue Apartment Corp., 439 F.2d 477, 481-85 (D.C. Cir.1970). There appears to be a marked tendency in Florida decisions to recognize the right of tenants to recover damages for criminal attacks on the leased premises on several additional legal theories. E.g., Green Companies v. Divincenzo, 432 So.2d 86 (Fla. 3d DCA 1983); Ten Associates v. McCutchen, 398 So.2d 860 (Fla. 3d DCA 1981); Whelan v. Dacoma Enterprises, Inc., 394 So.2d 506 (Fla. 5th DCA 1981); Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla. 3d DCA 1980); Rosier v. Gainesville Inns Associates, Ltd., 347 So.2d 1100 (Fla. 1st DCA 1977). In each of these cases, reference is made to prior criminal episodes having occurred on the premises or in the area, but none of these decisions held that pleading and proof of prior similar incidents on the landlord's premises is the exclusive basis for imposing a duty on the landlord. On the contrary, some of them have recognized alternative legal grounds for implying a landlord's duty to the tenant, such as the landlord's having undertaken to provide security protection by contract provisions, having made representations concerning security to the tenant, or having abolished past security practices that provided tenants with protection from criminal attacks. Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98, Ten Associates v. McCutchen, 398 So.2d 860; Green Companies v. Divincenzo, 432 So.2d 86. In Whelan v. Dacoma Enterprises, Inc., 394 So.2d 506, the court upheld the complaint as sufficiently alleging negligence. It is noteworthy that the court also commented on the lack of "an allegation of a violation of a statute such as the Landlord/Tenant Laws," or a violation of the terms of the lease between the parties, or of any implied contract arising out of the relationship of landlord and tenant. 394 So.2d at 508.
No Florida decision, to our knowledge, has considered the legal impact of the Florida Residential Landlord and Tenant Act, sections 83.40 through 83.63, Florida Statutes (1981), on a tenant's right to recover damages in tort for a criminal attack under the circumstances alleged in the instant case. See Cutler v. Board of Regents, 459 So.2d 413 (Fla. 1st DCA 1984). See generally Note, The Implied Warranty of Habitability Comes Home, 11 Stetson L.Rev. 537 (1982); O'Donnell, Landlord Liability for Crime to Florida Tenants  The New Duty to Protect from Foreseeable Attack, 11 Fla.St.L.Rev. 979 (1984). The act became effective in 1973, ch. 73-330, Laws of Florida (1973), and represented the culmination of a comprehensive study of Florida landlord-tenant law by the Florida Law Revision Council[2] and its legislative recommendations. FLA. LAW REVISION COUNCIL, REPORT AND RECOMMENDATION ON FLORIDA LANDLORD *1216 TENANT LAW (1973) [hereafter cited as COUNCIL REPORT]. The survey disclosed three defects in the then-existing law:
(1) The real nature of the legal relationship between a landlord and tenant was not codified or reflected in the statutes but remained primarily a group of common law principles gleaned from reported Florida court cases dealing with specific disputes.
(2) There was no differentiation between commercial tenancies and residential tenancies despite the substantial inequality in the respective bargaining positions of the landlord and residential tenant because the relationship was treated as a commercial transaction between coequal businessmen and ignored the reality that the residential tenant was merely a consumer in the residential marketplace in need of special protection akin to that provided by the Uniform Commercial Code in consumer transactions.
(3) The Florida landlord-tenant law, both substantive and procedural, was weighted on the side of the landlord with no corresponding protection for the tenant because the law was founded on common law principles of caveat emptor brought over from England for use in an agrarian-oriented society; but that society was becoming more urbanized and characterized by increasing dependency of tenants on landlords for maintenance and protection of the leased premises. COUNCIL REPORT, pp. 2-6. Noting that reform of landlord-tenant law throughout the country was recognizing an implied warranty of habitability in court decisions and legislative enactments, the Council proposed a model act with appropriate explanatory comments to each section for the express purpose of changing existing common law principles in Florida and curing the three significant defects in the existing law. COUNCIL REPORT, pp. 8-40. With only a few changes, the recommended act became chapter 73-330.
It is clear that the Florida Residential and Landlord-Tenant Act imposes definite obligations upon the landlord which continue throughout the term of the lease and which did not exist under the common law. Section 83.51 specifies the extent of the landlord's statutory obligation to maintain the leased premises and specifically requires, in subsection (2)(a), that the "landlord of a dwelling unit ... shall, at all times during the tenancy, make reasonable provision for ... locks and keys [and] the clean and safe condition of common areas."[3] The act is applicable to dwelling units such as the one involved in this case. § 83.41, Fla. Stat. (1981). The act explicitly imposes "an obligation of good faith in the performance or enforcement of every duty under the act." § 83.44, Fla. Stat. (1981). The statute provides that "any right or duty declared in this part is enforceable by civil action" and "if either the landlord or the tenant fails to comply with the requirements of ... this part, the agrieved party may recover damages caused by the noncompliance." §§ 83.54, 83.55, Fla. Stat. (1981).[4] The act has been characterized as creating a "statutory warranty of habitability," Mansur v. Eubanks, 401 So.2d 1328, 1330 (Fla. 1981). A landlord's violation of the act is at least evidence of negligence. Bennett v. Mattison, 382 So.2d 873 (Fla. 1st DCA 1980); Thompson v. Rock Springs Mobile Home Park, 413 So.2d 1213 (Fla. 5th DCA 1981).[5] *1217 To state a cause of action in negligence, it should be alleged and proved that the landlord had actual or constructive knowledge of the violation said to be creating a dangerous condition for sufficient time to have it remedied. Firth v. Marhoefer, 406 So.2d 521 (Fla. 4th DCA 1981).
Section 83.51 plainly imposes a continuing obligation on the landlord to provide the leased premises "with locks and keys" in the leased areas and the common areas, and to maintain the common areas of the premises in a "safe condition."[6] Without debating whether these provisions may be construed as requiring the landlord to provide security protection in the form of guards, scanning video cameras, or other security measures, it cannot be doubted that the statute at least contemplates that the physical structure will be furnished with locks and maintained in a reasonably safe condition to protect the tenant from unwanted intrusion of undesirable persons. Certainly the principal reason, if not the only reason, for furnishing locks and keys is to prevent a human being from making an unauthorized entry into the premises. Similarly, means of preventing unauthorized access through doors and windows may be essential to maintaining the safe condition of common areas.
It has been held that a landlord's breach of an implied duty to provide locks and maintain common areas in a safe condition may serve as the legal basis for liability to the tenant for injuries resulting from unauthorized entry and criminal acts within the premises. See Whelan v. Dacoma Enterprises, Inc., 394 So.2d 506; Rosier v. Gainsville Inns Associates, Ltd., 347 So.2d 1100. Since the purpose of the statutory duty to provide locks is the prevention of criminal acts by unauthorized persons having unrestrained access to the premises, we conclude that the landlord's duty to reasonably provide protection from criminal attack does not have to be implied from prior similar occurrences on the leased premises.
Next, we must consider whether the breach of that duty may constitute the legal cause of plaintiff's personal injuries sustained in the attack by the unauthorized intruder.
The criminal attack was unquestionably an intervening act causing plaintiff's injuries. Whether that intervening act relieves defendants of liability depends on whether it was reasonably foreseeable. Gibson v. Avis Rent-A-Car Systems, Inc., 386 So.2d 520 (Fla. 1980). Therefore, unless the alleged criminal attack was unforeseeable as a matter of law, dismissal of the amended complaint on this ground cannot be sustained. The appropriate analysis of this issue was set forth in Gibson v. Avis Rent-A-Car Systems, Inc., 386 So.2d at 522:
Another way of stating the question whether the intervening cause was foreseeable is to ask whether the harm that occurred was within the scope of the danger attributable to the defendant's negligent conduct. A person who creates a dangerous situation may be deemed negligent because he violates a duty of care. The dangerous situation so created may result in a particular type of harm. The question whether the harm that occurs was within the scope of the risk created by the defendant's conduct may be answered in a number of ways. *1218 First, the legislature may specify the type of harm for which a tort-feasor is liable. [Citation omitted.] Second, it may be shown that the particular defendant had actual knowledge that the same type of harm has resulted in the past from the same type of negligent conduct. [Citation omitted.] Finally, there is the type of harm that has so frequently resulted from the same type of negligence that `in the field of human experience the same type of result may be expected again.' [Citation omitted.]
It cannot be said that the particular provisions of section 83.51 relied on in this case specify the type harm for which a tort feasor is liable. Nor, in the absence of a prior attack on the specific premises may it be said that the defendants had actual knowledge that the same type harm had resulted in the past from the same type negligent conduct. We conclude, however, that the type harm suffered by the plaintiff in this case has so frequently resulted from the same type negligence, to wit, not providing security locks on doors and windows to prevent unauthorized entry by criminals, that in the field of human experience the same type of result may be expected again.
The owner of a car who leaves it unlocked with the key in the ignition, in violation of a statute, may be held liable for the conduct of a thief who steals the car and subsequently injures someone while negligently operating the stolen vehicle. The criminal theft and operation of the car, although an intervening act, is a reasonably foreseeable act which the statute is intended to prevent; hence, the chain of causation is not broken and the original negligence of the owner is the proximate cause of the damages sustained. Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54 (Fla. 1978). See also Nicholas v. Miami Burglar Alarm Co., Inc., 339 So.2d 175 (Fla. 1976); McCord v. Sentry Protection, Inc., 427 So.2d 1132 (Fla. 5th DCA 1983). Likewise, where the duty breached by a landlord has as one of its principal purposes the prevention of entry by unauthorized persons, the deliberate act of such person in committing sexual battery upon a tenant does not constitute an "independent intervening cause" that cuts off the chain of legal causation and insulates the landlord from liability. Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98; Ten Associates v. McCutchen, 398 So.2d 860; Whelan v. Dacoma Enterprises, Inc., 394 So.2d 506; Rosier v. Gainsville Inns Associates, Ltd., 347 So.2d 1100; Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442 (Fla. 5th DCA 1981), cert. denied, 411 So.2d 384 (Fla. 1981). Where reasonable persons might differ, the ultimate determination of foreseeability and legal cause are questions for the jury. Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d at 56; Padgett v. West Florida Electric Cooperative, Inc., 417 So.2d 764 (Fla. 1st DCA 1982). In determining foreseeability, it is not necessary to "be able to foresee the exact nature and extent of the injuries or the precise manner in which the injuries occur"; it is only necessary that "the tort-feasor be able to foresee that some injury will likely result in some manner as a consequence of his negligent acts." Crislip v. Holland, 401 So.2d 1115, 1117 (Fla. 4th DCA 1981). Unquestionably, allegations that prior criminal acts had occurred in the vicinity is pertinent to determining foreseeability, and police records of reported crimes in the geographical area are usually competent evidence on this issue. Green Companies v. Divincenzo, 432 So.2d 86.[7]
In view of the obvious purpose of the statutory duty to provide locks and security to prevent potential damages caused by the acts of unwarranted trespassers on the leased premises, we expressly decline to require as the essential predicate to liability allegation and proof that the landlord had actual or constructive knowledge of prior similar criminal acts committed on the premises. We are not *1219 willing to give the landlord one free ride, as it were, and sacrifice the first victim's right to safety upon the altar of foreseeability by slavishly adhering to the now-discredited notion that at least one criminal assault must have occurred on the premises before the landlord can be held liable. Isaacs v. Huntington Memorial Hospital, 38 Cal.3d 112, 211 Cal. Rptr. 356, 695 P.2d 653 (1985). In this exceptionally well-written opinion, the Supreme Court of California posed the question presented as "whether a plaintiff, in an action against a landowner for criminal acts of third persons on the landowner's property, may establish foreseeability other than by evidence of prior similar incidents on those premises." 695 P.2d at 655. Answering this question in the affirmative, the court stated in pertinent part:
A recent line of Court of Appeal cases has rigidified the foreseeability concept in situations involving a landowner's liability for the criminal acts of third persons against invitees. Those cases have established the rule that `in the absence of prior similar incidents, an owner of land is not bound to anticipate the criminal activities of third persons, particularly where the wrongdoer was a complete stranger to both the landowner and the victim and where the criminal activity leading to the injury came about precipitously.' [Citation omitted.]
This rule is fatally flawed in numerous respects. First, the rule leads to results which are contrary to public policy. The rule has the effect of discouraging landowners from taking adequate measures to protect premises which they know are dangerous. This result contravenes the policy of preventing future harm. Moreover, under the rule, the first victim always loses, while subsequent victims are permitted recovery. Such a result is not only unfair, but is inimical to the important policy of compensating injured persons [citation omitted]. Surely, a landowner should not get one free assault before he can be held liable for criminal acts which occur on his property.
Second, a rule which limits evidence of foreseeability to prior similar criminal acts leads to arbitrary results and distinctions [citation omitted]. Under this rule, there is uncertainty as to how `similar' the prior incidents may be to satisfy the rule. The rule raises a number of other troubling questions. For example, how close in time do the prior incidents have to be? How near in location must they be? The rule invites different courts to enunciate different standards of foreseeability based on their resolution of these questions.
Third, the rule erroneously equates foreseeability of a particular act with previous occurrences of similar acts. This court has already rejected that notion. "`The mere fact that a particular kind of an accident has not happened before does not ... show that such accident is one which might not reasonably have been anticipated.' [Citation omitted.] Thus, the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts." [Citation omitted.] Finally, the "prior similar incidents" rule improperly removes too many cases from the jury's consideration. It is well established that foreseeability is ordinarily a question of fact. [Citations omitted.] "It may be decided as a question of law only if, `under the undisputed facts there is no room for a reasonable difference of opinion.'" [Citation omitted.]
695 P.2d at 658-659. After noting the general reluctance to remove foreseeability questions from the jury, the court concluded:
Thus, foreseeability is determined in light of all the circumstances and not by a rigid application of a mechanical `prior similars' rule. [Citation omitted.] As this court has held, `what is required to be foreseeable is the general character of the event or harm ... not its precise nature or manner of occurrence.' [Citation omitted.] Prior similar incidents are helpful to determine foreseeability, but they are not necessary. A rule that limits evidence of foreseeability to prior *1220 similar incidents deprives the jury of its role in determining that question.
695 P.2d at 659. The California intermediate appellate court decisions cited by defendants are no longer persuasive authority.
The same principles relied on by the California Supreme Court in reaching this result have been applied in determining foreseeability in other contexts by Florida courts. See, e.g., Gibson v. Avis Rent-A-Car Systems, Inc., 386 So.2d 520; Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54; Crislip v. Holland, 401 So.2d 1115. We conclude, therefore, that the issue of foreseeability in this case is not a question of law essential to the element of the landlord's duty, but is a question of fact for the jury on the element of causation.
The allegations of the amended complaint show that plaintiff had complained to defendants of her fear and insecurity because of the absence of proper locks and security on the doors and windows of the apartment premises, that a higher-than-average level of criminal attacks and unlawful breaking-and-entering offenses had occurred in the neighborhood police district in which the apartment is located, and that plaintiff had complained to defendants of missing and defective locks which permitted trespassers to enter the premises on prior occasions. These allegations, considered with the alleged violations of the statutory duty to provide locks and keys and to maintain the common areas in a safe condition, are sufficient to state a cause of action in negligence. See Bennett v. Mattison, 382 So.2d 873; Whelan v. Dacoma Enterprises, Inc., 394 So.2d 506; Trentacost v. Brussel, 82 N.J. 214, 412 A.2d 436, 443-45 (1980); Day v. Castilow, 407 So.2d 510 (La. App. 4th Cir.1981).
We do not consider whether the facts alleged in the amended complaint are sufficient to state a cause of action for breach of implied warranty of habitability recognized by the Supreme Court in Mansur v. Eubanks, 401 So.2d 1328 (Fla. 1981). A respectable body of developing law has allowed recovery of damages for personal injuries caused by the breach of this implied warranty. See generally Cutler v. Board of Regents, 459 So.2d 413 (Fla. 1st DCA 1984); O'Donnell, Landlord Liability for Crime to Florida Tenants  The New Duty to Protect from Foreseeable Attack, 11 Fla.St.L.Rev. 979, 995-96 (1984); Note, The Implied Warranty of Habitability Comes Home, 11 Stet.L.Rev. 537, 547-51 (1982). Whether this implied warranty is or will become comparable to the implied warranty of merchantability and fitness or strict liability recognized in products liability cases, with its attendant change in proof of fault as compared to pure negligence,[8] remains an open question which we do not address. Appellant's brief has made reference to this implied warranty, but the amended complaint did not allege a separate cause of action for this breach of warranty, and the issue has not been thoroughly briefed by the respective parties on appeal. Further amendment by plaintiff to allege this additional theory is a question we leave to the trial court's discretion on remand.
We also conclude that the trial court erred in dismissing the claim for punitive damages. The allegations of the amended complaint show that plaintiff, out of fear for her safety, made requests of defendants to provide locks or other means of securing the premises to prevent unwanted trespassers from entering and harming her. This request was taken up with defendants by plaintiff, and defendants refused to comply with her request because they planned to demolish the building and did not want to "waste" their money by expending it for this purpose. Defendants were under a statutory mandate *1221 to act in good faith in performing every duty under the act. Defendants' breach of duty to provide locks and security and to keep the common areas in a safe condition is, for the reasons stated, tantamount to a willful tort. Since plaintiff's amended complaint is in tort, not in contract, it cannot be said as a matter of law that plaintiff, under the allegations of her complaint, could not adduce evidence to prove the requisite malice based on defendants' intentional wrongdoing, entire want of care or attention to duty, and great indifference to plaintiff's personal safety under the test laid down in Griffith v. Shamrock Village, 94 So.2d 854, 858 (Fla. 1957):
The general rule is that punitive damages are not recoverable for breach of contract, irrespective of the motive of defendant. But where the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegation and proof. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort. [Citation omitted.]
* * * * * *
In Kirksey v. Jernigan, Fla. 1950, 45 So.2d 188, 17 A.L.R.2d 766, this court held that punitive damages were allowable for and that malice could be imputed from the entire want of care or attention to duty, or great indifference to the persons, property, or rights of others. This is consistent with the theory that punitive damages are allowed as a deterrent to commission by others of similar offenses.
The rule as stated in Griffith v. Shamrock Village remains viable. E.g., Southern Bell Tel. & Tel. Co v. Hanft, 436 So.2d 40 (Fla. 1983); Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175 (Fla. 1976). We find nothing in Como Oil Co. v. O'Loughlin, 466 So.2d 1061 (Fla. 1985), and White Construction Co., Inc. v. DuPont, 455 So.2d 1026 (Fla. 1984), which suggests that the Supreme Court has overruled or otherwise limited the rule in Shamrock Village.
The judgment is reversed and the case is remanded for further proceedings.
REVERSED and REMANDED.
ERVIN, C.J., and MILLS, J., concur.
NOTES
[1] The amended complaint alleges liability for compensatory damages in one count and punitive damages in a second count. The entire complaint sounds in tort, not contract, and no attempt has been made to separate any allegations of breach of implied contract into separate counts or paragraphs. Rule 1.110(f), Fla.R. of Civ.P. Although the statutory obligations created by section 83.51 are by implication a part of the landlord's duties under the lease agreement, see Frizzell v. Bartley, 372 So.2d 1371 (Fla. 1979); Schekter v. Michael, 184 So.2d 641 (Fla. 1966), we consider the breach of implied contract allegations only to the extent they may give rise to a duty of care or warranty of habitability cognizable in tort, and decline to consider the sufficiency of the complaint to state a cause of action in contract.
[2] The Council's functions were described in section 13.96, Florida Statutes (1973):

Functions.  The council shall:
(1) Examine the common law, constitution and statutes of the state and current judicial decisions for the purpose of discovering defects and anachronisms in the law and recommending needed reforms;
(2) Recommend, from time to time, such changes in the law as it deems proper to modify or eliminate antiquated and inequitable rules of law, and to bring the law of the state into harmony with modern conditions;
(3) Conduct such surveys or research of the law of Florida as the legislature may request.
[3] Use of the word "shall" in this section was intended to impose a mandatory duty. COUNCIL REPORT, Comment, p. 18.
[4] Section 83.55, as recommended by the Council, provided that the aggrieved party could recover "damages caused by the non-compliance, but punitive damages are not recoverable under this part." The limitation on punitive damages was deleted in the final bill, suggesting that punitive damages may be recovered in appropriate cases. Ch. 73-330, sec. 2, p. 775, Laws of Florida (1973). The cases cited in the Council's report as authority for the implied warranty of habitability theory spoke in terms of consequential damages, some in tort, so it may logically be assumed that the statutory damages provision was not intended to be limited to contract damages.
[5] Appellant argues that the violation of section 83.51(2)(a)2 and 3 constitutes negligence per se under the test in De Jesus v. Seaboard Coastline R.R. Co., 281 So.2d 198 (Fla. 1973). We do not consider this section to be a "strict liability statute" in the sense that it protects a particular class of persons from their inability to protect themselves, e.g., Tamiami Gun Shop v. Klein, 116 So.2d 421 (Fla. 1959); nor is it a penal statute designed to protect a particular class of persons from a particular injury or type of injury, as was the statute in De Jesus, since no criminal penalties are imposed for violating section 83.51. See Trentacost v. Brussel, 82 N.J. 214, 412 A.2d 436, 443-45 (1980).
[6] Appellees argue that section 83.51 does not require the landlord to provide "locks and keys" for outside entrances to the building or the upstairs hallway bathroom door because these areas are not a part of the "dwelling unit." We disagree. The term "dwelling unit" is defined in section 83.43(2) to mean a structure or part of a structure that is rented for use as a residence, and is broad enough to include the bathroom and common areas.
[7] While the evidence need not relate to offenses occurring on the premises or within the block where the apartment is located, we do not venture any opinion on the admissibility of specific evidence that may be offered at trial.
[8] See, e.g., West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976); Carter v. Hector Supply Co., 128 So.2d 390 (Fla. 1961); Hartman v. Opelika Machine & Welding Co., 414 So.2d 1105 (Fla. 1st DCA 1982); Wisner v. Goodyear Tire & Rubber Co., 167 So.2d 254 (Fla. 2d DCA 1964); 41 Fla.Jur.2d, Products Liability, §§ 21-22 (1983).