MAY, C.J.
This case involves a sad and tragic loss of life when two young adults were murdered in their apartment. A lawsuit resulted in a judgment against the owner of the apartment complex. The owner appeals and raises six issues. The first issue concerns whether the trial court should have granted a directed verdict on liability because the plaintiff failed to prove causation where there was no evidence of forcible entry. We find Brown v. Motel 6 Operating, L.P., 989 So.2d 658 (Fla. 4th DCA 2008) dictates the outcome of this case and reverse the judgment.
In late 2004, two young adults moved into an apartment complex marketed as a “gated community” with a gated front entrance. Water surrounded approximately seventy percent of the complex, and a wall or fence surrounded the remainder. The complex had a policy of providing reasonable lighting, locks, and peepholes. The apartments contained alarm systems, which the residents could activate.
A year after they moved in, the victims were shot to death by unknown assailants inside their apartment. Although there was no sign of forced entry, an engagement ring, cash, credit cards, and a computer modem were stolen from the apartment.
Evidence revealed that in the three years prior to the murders, there were two criminal incidents where the gate had been broken and perpetrators followed the residents onto the premises. One of these incidents resulted' in an armed robbery; the other resulted in an assault. The entrance gate was broken for approximately two months prior to the murders.
The defendant, a national company owning approximately one hundred properties, owned the complex. It had a manual providing that a notice to residents is recommended when “a significant crime” occurs on the property, especially a violent crime or forced entry burglary. The manual recommended that such notice be provided to residents on the same day that manage *931 ment becomes aware of the incident, and provided a form for such notices. No notices were sent to the residents of the twenty criminal incidents (including seven apartment burglaries, two robberies, and ten motor vehicle thefts) that occurred in the three years prior to the murders.
The plaintiff, as personal representative of the decedents’ estate, filed a complaint against the defendant, alleging the defendant’s negligence was a proximate cause of the deaths. The complaint alleged the defendant did not maintain the premises in a reasonably safe condition by failing to: (1) maintain the front gate; (2) have adequate security; (3) prevent dangerous persons from gaining access to the premises; and (4) protect and warn residents of dangerous conditions and criminal acts.
During discovery, the defendant deposed the boyfriend of one of the decedents. He testified that he was on the phone with the decedent prior to eleven o’clock in the evening. The call ended when the decedent told him that two identified people known to the decedent were at the door. When the boyfriend called back, no one answered.
The case proceeded to trial. The plaintiff moved in limine to exclude the boyfriend’s statement about who was at the door on the night of the murders. The plaintiff argued that the statement constituted hearsay — in fact double hearsay— because the boyfriend did not testify at trial. The defendant argued that the statements were admissible as spontaneous statements. Alternatively, the statements were admissible because they did not fall within the definition of hearsay. The trial court ruled the statements inadmissible and provided the following explanation:
TRIAL COURT: This is a very important portion. I mean, purportedly from your standpoint just before the woman was murdered she answered the door and then told this fellow who was at the door. And then that was her last conversation with him from your standpoint.
And your argument is she knew who murdered these two people. And that’s a very important ruling in the case. And I’ll tell you right now unless he’s here to fill me in with a little more on the situation because I’m not clear from reading the deposition, the depo is not coming in.[1]
Later in the trial, the plaintiff offered the testimony of a criminology expert. He testified that most of the crimes at the complex in the three years prior to the murders were opportunistic in nature. Opportunistic crimes are those committed by perpetrators who look for easy targets. He further testified that such precursor crimes need to be monitored by the landowner because awareness is the cornerstone of crime prevention. He also noted that the defendant’s training video informed its personnel that they needed to minimize such problems “through awareness.”
The expert noted that the training video also addressed the importance of repairs to mechanical failures. Yet, the evidence demonstrated the gate had been inoperable for four months during the year of these murders. The expert testified that it appeared the murders occurred in the course of another felony, such as a home invasion — an opportunistic crime. However, the expert agreed that there had never been a murder, shooting, or rape at the *932 complex. The expert acknowledged there was no way of knowing precisely how the murders took place.
The defense expert, a security consultant, testified that the murders were not foreseeable. Of the twenty crimes which occurred on the premises in the three years leading up to the murders, none were violent crimes nor predicted homicide.
The defense expert explained that crimes such as stabbings, shootings, murders, or rapes constitute “predictors” of future violent crimes, but none of those had occurred at the location so there was no reason to foresee these murders. The defense expert opined that the security measures were “more than reasonable” and met or exceeded the industry standard of security for complexes in that location. He did not believe the gate was necessary given the low level of crime reported at that location. In conclusion, the defense expert testified:
The [complex] provided [the decedents] with a secure locked environment, an apartment with one entrance, a steel door, and a dead bolt lock. There is no sign of forced entry. The materials that I received lead me to believe that the door was opened to the person that committed this particular crime.
The defendant moved for directed verdict, arguing the plaintiff had not established proximate cause or that the defendant had control over the apartment complex. The trial court denied the motion. The jury found the defendant forty percent comparatively negligent, and awarded damages of 4.5 million dollars apportioned to various survivors of the decedents.
The defendant moved for a new trial and a judgment notwithstanding the verdict, which the trial court denied. From the judgment and these orders, the defendant now appeals.
On appeal, the defendant argues the trial court erred in denying its motion for directed verdict because the plaintiff failed to establish proximate cause for the deaths. In support, the defendant relies on the plaintiffs inability to explain how the assailants gained entry into the apartment. The defendant also argues that the murders were not reasonably foreseeable in light of the relatively small number of property crimes that occurred on the premises in the three years prior to the murders. The plaintiff responds that the murders were reasonably foreseeable and that the proof of gaps in security established the requisite causation.
We have de novo review of a trial court’s ruling on a motion for directed verdict. Schein v. Ernst & Young, LLP, 77 .So.3d 827, 830 (Fla. 4th DCA 2012).
A directed verdict is appropriate “when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ about the existence of a material fact and the movant is entitled to judgment as a matter of law.” Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009). “In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiffs injury.” Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984). “In other words, the plaintiff must show that what was done or failed to be done probably would have affected the outcome.” Id. at 1020.
Motel 6 dictates the result in this appeal. In Motel 6, the victim was shot to death in his motel room. Motel 6, 989 So.2d at 658. His estate brought a wrongful death claim against Motel 6, alleging that “in light of *933 past criminal activity, [it] was negligent in failing to take greater security precautions.” Id.
There, we affirmed a summary judgment in favor of Motel 6 because “there was no evidence of a forced entry, nor any evidence that the shooting could have been prevented with greater security.” Id. at 658-59. Although we acknowledged that a “jury could find that the motel breached its duty to provide adequate security,” we explained that the facts did not demonstrate that the victim’s death “resulted from [this] breach of duty.” Id. at 659.
Here, although there was evidence to support a breach of duty to provide adequate security, the plaintiff could not establish that the breach was the proximate cause of the murders. As in Motel 6, the victims were murdered inside their apartment. There was no sign of a forced entry. The plaintiffs expert acknowledged that it was unknown what happened on the night of the murders. Without proof of how the assailants gained entry into the apartment, the plaintiff simply could not prove causation.[2]

Reversed and Remanded.

TAYLOR and CIKLIN, JJ., concur.

. Because we resolve this appeal based on the plaintiff's failure to prove causation, we do not reach this evidentiary issue.

. The plaintiff relies on Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla. 3d DCA 1980) to argue that a reasonable jury could have found the defendant's failure to provide adequate security was the proximate cause of the deaths. We find this case factually distinguishable and unpersuasive. There, the complex had been plagued with violent crime, and evidence established that an intruder entered the apartment through a second story window facing a common walkway.