**COMMONWEALTH OF MASSACHUSETTS**

v.

**Carla HILLS, Secretary of the Department of Housing & Urban Development.**

Crim. No. 77–212–F.

United States District Court, D. Massachusetts.

Aug. 16, 1977.

Richard Glovsky, Asst. U. S. Atty., Boston, Mass., for defendant.

MEMORANDUM AND ORDER

FREEDMAN, District Judge.

This matter is before the court on defendant's motion to dismiss twenty-two criminal

complaints brought against the defendant. The complaints were initially filed in the Boston Housing Court but were subsequently removed to this court pursuant to 28 U.S.C. § 1442. The complaints allege violations of the State Sanitary Code in buildings which the Department of Housing and Urban Development ("HUD") had acquired pursuant to the National Housing Act, Section 204(a), 12 U.S.C. § 1710(a). The defendant was the Secretary of the Department of Housing & Urban Development at the time the complaints were filed but no longer occupies that office. A hearing was scheduled before this court.[1] However, no one appeared to prosecute the case on behalf of the complainants. Although this case could thus be dismissed for lack of prosecution upon motion by the defendant, no such motion has been made. Moreover, the court believes the matter is deserving of more thoughtful attention. After careful consideration of the pertinent documents, the memorandum of the defendant and all other relevant authority, the court grants the defendant's motion to dismiss.

■ Mrs. Hills is before the court as a criminal defendant solely as a result of her previous position as Secretary of HUD. Her only relationship to the property involved is derived from her position as Secretary in carrying out duties conferred upon her pursuant to the statutory authority granted in Section 204(g) of the National Housing Act, 12 U.S.C. § 1710(g), which states in pertinent part:

(g) Notwithstanding any other provision of law relating to the acquisition, handling, or disposal of real property by the United States, the Secretary shall have power to deal with, complete, rent, renovate, modernize, insure, or sell for cash or credit, *in his discretion*, any properties conveyed to him . . . (Emphasis supplied.)

This provision thus grants the Secretary the right to determine, in her discretion, what to do with these properties.[2]

The adoption of the State Sanitary Code "which may provide penalties for violations thereof not exceeding five hundred dollars for any one offense" is authorized by Mass. Gen.Laws c. 111 § 127A. Section 36.2 of the State Sanitary Code provides:

36.2 Any person who shall fail to comply with any order issued pursuant to the provisions of this code shall upon conviction be fined not less than ten nor more than five hundred dollars. Each day's failure to comply with an order shall constitute a separate violation.

The Supreme Court has held that a federal officer cannot be subject to prosecution under the criminal laws of any State or political subdivision of the United States if the act done was one which the officer was authorized to do by the law of the United States, the act was a part of the officer's duties, and in doing that act, the officer did no more than was necessary and proper for him to do. *In re Neagle*, 135 U.S. 1, 75, 10 S.Ct. 658, 34 L.Ed. 55 (1890). *Neagle* involved the appropriateness of granting a writ of habeas corpus to secure the release of a United States Marshal from the custody of the California sheriff. The Marshal was being held on a murder charge arising from the Marshal's efforts to protect a Justice of the United States Supreme Court from an attacker. The Supreme Court summed up the importance of limiting the criminal jurisdiction of state courts over federal officials in the following manner:

"The general government . . . can act only through its officers and agents, and they must act within the States. If,

---

1. The notice sent out by the court set the hearing for Thursday, March 9, 1977. Unfortunately, March 9, 1977 fell on a Wednesday. To remedy this situation, however, the deputy clerk of court remained in the courtroom on both Wednesday, March 9, 1977, and Thursday, March 10, 1977, to await the arrival of plaintiffs or their counsel. Neither appeared on either date. The defendant, however, did appear on Wednesday, March 9, 1977, and would have been available the following day if the plaintiffs or their counsel had appeared at that time.

2. The complaints make no allegation that the defendant performed any specific act that was not in the performance of her official duties.

when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a state court for an alleged offense against the law of the state, yet warranted by the federal authority they possess, and if the general government is powerless to interfere at once for their protection—if their protection must be left to the action of the state court—the operations of the general government may at any time be arrested at the will of one of its members. . . . We do not think such an element of weakness is to be found in the Constitution. The United States is a government with authority extending over the whole territory of the Union, acting upon the States and the people of the States. While it is limited in the number of its powers, so far as its sovereignty extends it is supreme. No state government can exclude it from the exercise of any authority conferred upon it by the Constitution; obstruct its authorized officers against its will; or withhold from it, for a moment, the cognizance of any subject which that instrument has committed to it."

*Id.* at 62, 10 S.Ct. at 667, quoting from *Tennessee v. Davis,* 100 U.S. 257, 262, 25 L.Ed. 648 (1879).

The Supreme Court reaffirmed the *Neagle* decision in *Ohio v. Thomas,* 173 U.S. 276, 19 S.Ct. 453, 43 L.Ed. 699 (1899), where it held that a state prosecution against a governor of a federal soldiers home for serving the inmates oleomargarine in violation of state law was invalid since the institution was federally created and under the direct and sole jurisdiction of Congress. The Court stated:

In making provision for so feeding the inmates, the governor, under the direction of the board of managers and with the assent and approval of Congress, is engaged in the internal administration of a Federal institution, and we think a state legislature has no constitutional power to interfere with such management as is provided by Congress.

*Id.* at 282, 19 S.Ct. at 455.

In *Johnson v. Maryland,* 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126 (1920), the Supreme Court held that an employee of the Post Office Department who had driven a government motor truck over a post road while in the performance of his official duties was not subject to state prosecution for driving without having obtained a license from the state and paying the corresponding state fee. The Court concluded that

"[s]uch a requirement [to obtain the license and pay the fee] does not merely touch the Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the Government has pronounced sufficient. It is the duty of the Department to employ persons competent for their work and that duty it must be presumed has been performed. *Keim v. United States,* 177 U.S. 290, 293, 20 S.Ct. 574, 44 L.Ed. 774.

*Id.* at 57, 41 S.Ct. at 17.

The Court in *Johnson* noted, however, that

t very well may be that, when the United States has not spoken, the subjection to local law would extend to general rules that might affect incidentally the mode of carrying out the employment—as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets.

*Id.* at 56, 41 S.Ct. at 16. In the instant case, however, the federal law has spoken by vesting the authority to act in the Secretary. Therefore, the Secretary is not subject to regulation by the state legislature by means of the State Sanitary Code. Consequently, she is not subject to criminal prosecution for violation of the Sanitary Code pursuant to Section 36.2 of that code. To allow subjection to such prosecution would interfere with the HUD Secretary's official duties in maintaining property acquired by HUD as authorized by Section 204(g) of the National Housing Act, 12 U.S.C. § 1710(g).

The defendant also argues, presumably by analogy to the civil context, that the

Secretary is insulated from state prosecution by the doctrine of sovereign immunity. As the court has already noted, the complaints in the present case are directed against the former Secretary of HUD relative to her statutory duties arising from ownership and management of HUD-owned properties under the National Housing Act. Consequently, these are suits against the sovereign. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

■ The National Housing Act provides that the Secretary of HUD shall, in carrying out the provisions of the Act, be authorized in her official capacity to sue and be sued in any court of competent jurisdiction, State or Federal. Section 1 of the Act, 12 U.S.C. § 1702. In interpreting the scope of immunity granted by this provision the Supreme Court, in *F.H.A. v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940), stated that "[c]learly the words 'sue and be sued' in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings." The Court held that the government was subject to those suits which were consistent with the statutory or constitutional scheme. However, such a waiver of sovereign immunity does not indicate a Congressional intent to authorize suit against the government for a penalty. Thus, in *Missouri Pacific Railroad Co. v. Ault*, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921), the Supreme Court held that a federal Director General of Railroads, who had taken control of the nation's railroads during World War I pursuant to the Federal Control Act, was not subject to a penalty provision in an Arkansas statute relative to payment of wages to an employee who had been discharged. The federal statute contained a provision "[t]hat carriers while under Federal control shall be subject to all laws and disabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other act applicable to such Federal control or with any order of the President." The Court concluded, however,

that this did not authorize suit against the government, stating:

> The Government undertook as carrier to observe all existing laws; it undertook to compensate any person injured through a departure by its agents or servants from their duty under such law; but it did not undertake to punish itself for any departure by the imposition upon itself of fines and penalties or to permit any other sovereign to punish it. Congress is not to be assumed to have adopted the method of fines paid out of public funds to insure obedience to the law on the part of the Government's railway employees.

*Id.* at 563, 41 S.Ct. at 597. *See People of California v. Department of the Navy*, 371 F.Supp. 82 (N.D.Cal.1973).

■ Similarly, in the present action, the defendant argues, again presumably by analogy, that the government has not waived its immunity with regard to any penalty imposed for violations of the State Sanitary Code. The court agrees with the defendant's contention.

For all the foregoing reasons, the complaints in the present action are hereby dismissed.

It is so ordered.