Daniel E. MANN, Elizabeth Cannon and Lillian Rauh, Plaintiffs-Appellees,

v.

Samuel R. PIERCE, Jr. and U.S. Dept. of Housing & Urban Development, Defendants-Appellants.

No. 85–3810.

United States Court of Appeals, Eleventh Circuit.

Nov. 13, 1986.

David Deutsch, Trial Atty., U.S. Dept. of HUD, Barry F. Smith, Washington, D.C., for defendants-appellants.

Jawdit I. Rubaii, Clearwater, Fla., for plaintiffs-appellees.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

This interlocutory appeal requires us to determine whether the tenants of a housing project owned by the United States Department of Housing and Urban Development (HUD) may sue their Federal landlord for breaching the warranty of habitability in their leases. We conclude that

they may bring their claims in district court.[1]

## I. BACKGROUND

The plaintiffs are tenants of the Mandalay Shores Apartments (the project). HUD owned and operated the project from 1977 to 1982. The tenants' two state law claims against HUD are: (1) a breach of Florida landlord-tenant law and (2) a common law contract action. Specifically, the tenants claim that, despite their pleas, HUD failed to adequately maintain the project during its ownership and was indifferent to the presence of carcinogenic asbestos. They allege that the project was infested with a wide array of vermin and that the ceiling tiles were crumbling and spewing asbestos whenever the roof leaked or the air conditioning was operated. They further allege that HUD failed to make reasonable provisions for running water and failed to maintain the project's elevators, plumbing, roof and common areas. The tenants seek redress including equitable restitution of rent paid while HUD allegedly maintained the project in substandard conditions.

## II. ANALYSIS

HUD's defense is two-fold. First, HUD asserts that the tenants' claims sound in tort and therefore must be dismissed because the tenants have failed to satisfy the jurisdictional requisite of the Federal Tort Claims Act, 28 U.S.C. § 2675, by pursuing an administrative remedy within HUD.[2] Alternatively, HUD argues that if the tenants' claims sound in contract, the suit must still be dismissed because the limited sovereign immunity waiver in HUD's charter, 12 U.S.C. § 1702, does not expose HUD to suits such as the present case.[3]

### A. *Tort or Contract?*

The Federal Tort Claims Act (FTCA) requires plaintiffs to exhaust administrative remedies before bringing tort actions against a federal agency. No one disputes that the tenants have not pursued administrative redress. The tenants argue that their complaint comprises contract claims, and is therefore beyond the requisites of the FTCA, while HUD steadfastly asserts that the tenants' claims are personal injury claims and must be dismissed due to the tenants' failure to exhaust administrative remedies.

The FTCA, 28 U.S.C. § 1346(b) provides the federal courts with exclusive jurisdiction over tort claims brought

---

1. Mann, Cannon, and Rauh (the tenants) initially sued Pierce, the Secretary of HUD, and HUD in federal court alleging contractual breaches and violations of Florida landlord-tenant law, Fla.Stat. § 83.51(1). The district court dismissed these claims without prejudice and suggested that the tenants refile their state law claims in the Florida courts. *Mann v. United States Department of Housing & Urban Development*, No. 81–288–Civ–T–K (M.D.Fla. Sept. 2, 1981). We affirmed. No. 81–5909 (11th Cir. Feb. 17, 1983). The tenants subsequently filed the present suit in Florida state court reasserting the state law claims. HUD, pursuant to 28 U.S.C. § 1442(a), removed the action to federal court and now presents this interlocutory appeal from the district court's denial of its motion to dismiss.

   Throughout this opinion, we refer to the defendants collectively as HUD.

2. 28 U.S.C. § 2675 provides in part:

   **Disposition by federal agency as prerequisite; evidence**

      (a) An action shall not be instituted upon a claim against the United States for money

damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency

   . . . .

3. 12 U.S.C. § 1702 provides in part:

   The Secretary [of HUD] shall, in carrying out the provisions of [the National Housing Act], be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

   HUD does not urge that this suit is barred by the Tucker Act, 28 U.S.C. § 1346(a). Although Tucker Act considerations created some initial confusion in this case, we agree with the district court that that statute does not establish a jurisdictional bar to this suit. *Cf. Graham v. Henegar*, 640 F.2d 732, 734 & n. 6 (5th Cir. Unit A 1981) (discussing in dicta the relationship of the Tucker Act and 12 U.S.C. § 1702).

against the United States where local law would hold a private person liable for the government's alleged wrongdoing.[4] HUD contends that any allegations that could be classified as tort claims must be brought pursuant to the FTCA. HUD essentially argues that because some of the tenants' consequential damages claims address personal injury, their suit should be regarded as sounding in tort. Simply because a breach of a contract may give rise to a tort action does not mean that a plaintiff is obligated to pursue a tort action. *See Holbrook v. City of Sarasota*, 58 So.2d 862, 864 (Fla.1952) (action properly brought in contract even though it could have properly been brought in tort); *cf. Martin v. United States*, 649 F.2d 701, 705 (9th Cir.1981) (breach of contractual duty gave rise to both tort and contract actions against the United States; plaintiff elected to pursue tort remedy); *Bor-Son Building Corp. v. Heller*, 572 F.2d 174 (8th Cir.1978) (tort claims against HUD barred by failure to satisfy FTCA requisites, contract claims based on same facts as tort claims not barred). The plaintiff is the author of his relief. By suing in contract instead of tort, plaintiffs ordinarily exchange the possibility of a punitive damages award for a less onerous burden of proof. *See* Keeton,

*Prosser and Keeton on Torts* § 92 at 664–65 (5th ed. 1984).[5] We therefore decline HUD's invitation to hold that because the tenants could have stated a claim sounding in tort, they were obligated to do so.[6]

■ We look to Florida law to determine whether the tenants' claims sound in tort and thus could not have been brought in state court. *See Murray v. United States*, 405 F.2d 1361, 1366–67 (D.C.Cir.1968) (technical differences between tort and contract claims retain vitality in determining whether the government has waived its immunity). Although the borderline between tort and contract claims in landlord-tenant disputes is not always clear, we conclude that Florida would recognize the tenants' claims as sounding in contract. First, the tenants asserted that HUD has breached an explicit term of their lease agreements. Their leases provide:

> 3. It is further agreed that the LANDLORD will make all necessary repairs to said property except repairs necessary to be made caused by the acts or neglect of the TENANT.

Second, the tenants alleged that HUD violated Florida landlord-tenant law, Fla.Stat.

---

**4.** 28 U.S.C. § 1346(b) provides in part:
**United States as defendant**

    .   .   .   .   .

(b) ... [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

**5.** We note, however, that a violation of Florida's Landlord and Tenant Act may support a punitive damages award. *See Deeb*, 472 So.2d at 1216 n. 4. We express no opinion as to whether a punitive damages award might be available or appropriate in the present case. *But see Commonwealth of Massachusetts v. Hills*, 437 F.Supp. 351, 354 (D.Mass.1977) (§ 1702 does not authorize suit against HUD to collect a penalty for a violation of state law).

**6.** We further agree with the tenants that HUD's removal to federal court, pursuant to 28 U.S.C. § 1442(a), provides an independent jurisdictional basis for their *contract* claims. We do not hold, however, that HUD's removal provides an independent basis of jurisdiction for any tort claims the tenants may contemplate. The invocation by a federal officer of § 1442(a) confers jurisdiction on the district court where jurisdiction might not otherwise exist. *See IMFC Professional Serv. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 156 (11th Cir.1982). Proper removal presupposes, however, that the initial jurisdiction of the state court was properly exercised. *See Armstrong v. Alabama Power Co.*, 667 F.2d 1385 (11th Cir.1982). As we indicate in section II B, *infra*, we conclude that, pursuant to 12 U.S.C. § 1702, HUD may properly be sued on contract claims in the state courts. We recognize, however, that § 1702 does not authorize state suits against federal officers that would otherwise be barred by the FTCA. 28 U.S.C. § 2679.

§ 83.51.[7] Section 83.51 codifies Florida landlord maintenance obligations and Fla. Stat. § 83.55 provides that a tenant may recover damages for a breach of these obligations. Section 83.51 implies a warranty of habitability in all Florida residential leases:

> The Florida Residential Landlord and Tenant Act's provisions impose contractual—not tort—liability upon the landlord. The express intention of the Law Revision Council in drafting the proposed act was to create an implied warranty of habitability which, when breached, relieved or diminished the tenant's obligation to continue rental payments.

*Mansur v. Eubanks,* 368 So.2d 645, 650 n. 11 (Fla.Dist.Ct.App.1979) (Ervin, J., specially concurring) (citations omitted), *quashed and remanded on other grounds,* 401 So.2d 1328, 1330 (Fla.1981) (citing Ervin concurrence with approval). The Florida courts have further indicated that section 83.51 codifies contractual obligations by noting that a breach of these obligations does not establish negligence per se. *Paterson v. Deeb,* 472 So.2d 1210, 1216 (Fla.

Dist.Ct.App.1985), *review denied,* 484 So.2d 8 (Fla.1986).[8] *See also Cutler v. Board of Regents,* 459 So.2d 413, 417 (Fla.Dist.Ct. App.1984) (suggesting that court would analyze breach of warranty of habitability claims as contract claims).

We hold, therefore, that the tenants' claims sound in contract and are not barred by the FTCA.

### B. *Sovereign Immunity*

Title 12 U.S.C. § 1702 authorizes the Secretary of HUD to sue and be sued in administering the National Housing Act (NHA). In *Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), the Court noted that section 1702 did not implicitly waive immunity where waiver would be inconsistent with the goals of the NHA. *Id.* at 245, 60 S.Ct. at 490. *Burr* emphasized, however, that the Court would not imply a reservation of sovereign immunity absent a clear showing that waiver would be inconsistent with the NHA's goals. *Id.* (sue and be sued clause makes HUD "no[ ] less amenable to judicial process than a private enterprise under like circumstances would be"). HUD argues

---

**7.** Fla.Stat. § 83.51 provides in part:

**Landlord's obligation to maintain premises**

(1) The landlord at all times during the tenancy shall:

(a) Comply with the requirements of applicable building, housing, and health codes; or

(b) Where there are no applicable building, housing, or health codes, maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition....

(2)(a) Unless otherwise agreed in writing, in addition to the requirements of subsection (1), the landlord of a dwelling unit ... shall, at all times during the tenancy, make reasonable provisions for:

1. The extermination of rats, mice, roaches, ants, wood-destroying organisms, and bedbugs. When vacation of the premises is required for such extermination, the landlord shall not be liable for damages but shall abate the rent.

2. Locks and keys.

3. The clean and safe condition of common areas.

4. Garbage removal and outside receptacles therefor.

5. Heat during winter, running water, and hot water.

.  .  .  .  .

(3) If the duty imposed by subsection (1) is the same or greater than any duty imposed by subsection (2), the landlord's duty is determined by subsection (1).

(4) The landlord is not responsible to the tenant under this section for conditions created or caused by the negligent or wrongful act or omission of the tenant, a member of his family, or other person on the premises with his consent.

Section 83.55 provides:

**Remedies; right of action for damages**

If either the landlord or the tenant fails to comply with the requirements of the rental agreement or this part, the aggrieved party may recover the damages caused by the noncompliance.

**8.** "Although the statutory obligations created by section 83.51 are by implication a part of the landlord's duties under the lease agreement," the *Deeb* court undertook a negligence analysis because the complaint there had insufficiently alleged a breach of a statutorily implied warranty of habitability. 472 So.2d at 1214 n. 1, 1220.

that paying personal injury damages—whether styled as contract or tort claims—does not come within the ambit of the Secretary's duties of administering the NHA and hence waiver of immunity here would be inconsistent with the goals of the NHA.

HUD contends that section 1702 was enacted to allay the fears of financial institutions that would refrain from extending loans secured by NHA insurance if HUD could not be sued in the event of default. *See Korman v. Federal Housing Administrator,* 113 F.2d 743, 746 & n. 15 (D.C.Cir. 1940) (citing legislative history). It is beyond question, however, that section 1702 is not confined to mortgage defaults. *See, e.g., Merrill Tenant Council v. United States Department of Housing & Urban Development,* 638 F.2d 1086 (7th Cir.1981) (section 1702 authorizes suit by tenants of HUD owned property seeking payment of interest, mandated by state law, on security deposits); *Industrial Indemnity, Inc. v. Landrieu,* 615 F.2d 644 (5th Cir.1980) (section 1702 authorizes suit against HUD by contractor's assignees to recover payment for construction work on HUD insured property); *Griffin v. Harris,* 480 F.Supp. 1072 (E.D.Pa.1979) (section 1702 authorizes suit against HUD by federally subsidized tenants seeking restitution of wrongfully withheld rent subsidies). The *Merrill* court explicitly concluded that owning and operating rental property was within the Secretary's duties of administering the NHA and therefore the Secretary could be sued, pursuant to section 1702, on contractual obligations involving HUD rental property. District courts similarly have held that section 1702 waives immunity from suits seeking damages stemming from the improper management or maintenance of HUD owned property. *See, e.g., Chase v. Theodore Mayer Bros.,* 592 F.Supp. 90 (S.D.Ohio 1983); *Estrada v. Hills,* 401 F.Supp. 429 (N.D.Ill.1975).

The goal of the NHA is to provide decent housing. In carrying out its congressional mandate, HUD often acquires ownership of housing projects and assumes the role of landlord. We hold, therefore, that the maintenance and management of HUD owned properties is within the Secretary's administrative duties and hence section 1702 waives immunity from suits stemming from the Secretary's performance of these duties. This determination, however, does not end our analysis. Section 1702 is a limited waiver of immunity and any damages sought from HUD must be payable from HUD's General Insurance Fund, maintained pursuant to 12 U.S.C. § 1735(c), and not from the United States Treasury. *Industrial Indemnity,* 615 F.2d at 646–47. Congress established the fund to meet the "expenses incurred in the handling, management, renovation, and disposal of" HUD owned properties. 12 U.S.C. § 1735c.

To aid in its determination of whether the tenants' claims could be paid from HUD's General Insurance Fund, the district court requested affidavits detailing the operation of the fund. HUD submitted the affidavit and deposition of Stephen Martin, HUD's Director of the Office of Financial Management. Martin's testimony indicates that the tenants' rents were directly deposited into the General Insurance Fund. Thus, to the extent that the tenants seek equitable restitution of the rents they paid during the period HUD allegedly maintained the premises in a substandard condition, the tenants clearly seek damages payable from HUD's General Insurance Fund. Accordingly, the tenants have satisfied the second requisite of section 1702's sovereign immunity waiver.

HUD also argues that the tenants' consequential damages claims are barred because these damages are not payable from the General Insurance Fund. Martin testified, however, that the fund is used to maintain and repair HUD properties and to pay insurance claims brought against HUD. Although the bulk of insurance claims chargeable to HUD involve HUD's obligations as a mortgage guarantor, we agree with the district court that HUD failed to submit any evidence that the tenants' consequential damages could not be paid from the fund. *See Burr,* 309 U.S. at

245, 60 S.Ct. at 490 (burden is on government to show "that certain types of suits" are implied exceptions to section 1702 waiver of immunity). As the district court observed, Martin has merely indicated that his office does not prepare a special line item in HUD's budget to reflect the expenses of suits such as the tenants' and that he does not recall whether HUD has paid similar damages in the past. The district court properly concluded that this fails to establish that HUD's fund could not or was not intended to pay consequential damages stemming from contractual breaches.

At this stage of the litigation, however, we decline to determine whether the tenants may recover their consequential damages from the fund. This is an interlocutory appeal primarily raising questions of jurisdiction. Having concluded that neither the requisites of the FTCA nor section 1702 bar the tenants' suit, we remand to the district court to determine the merits of the tenants' claims. Should the tenants fail to prove HUD's liability or their consequential damages, our pronouncements on the availability of these damages would be unnecessary.

We reject HUD's final argument that allowing the tenants' suit to go forward would impose on HUD's discretion to establish rental fees for HUD owned property. *See Choy v. Farragut Gardens 1, Inc.*, 131 F.Supp. 609 (S.D.N.Y.1955). The tenants do not challenge their rents as excessive; they seek restitution of their rents because they allege that they did not receive the habitable premises for which they contracted. Accordingly, the instant suit does not challenge HUD's authority to determine appropriate rental rates for its properties.

### III. CONCLUSION

In light of the foregoing, we conclude that the tenants' claims sound in con-

tract and thus are not barred by the requisites of the FTCA. We further conclude that section 1702 does not reserve sovereign immunity from the tenants' suit and that at least part of the damages sought are directly traceable, and hence recoverable, from HUD's General Insurance Fund.[9] Accordingly, we AFFIRM the district court's denial of HUD's motion to dismiss.

---

9. We do not hold that damages need be directly traceable to monies in the General Insurance Fund in order for damages to be authorized by HUD's sovereign immunity waiver. We merely hold that where funds sought are directly traceable to deposits in HUD's General Insurance Fund, there can be no question that recovery of those deposits will be a recovery from HUD and not the United States Treasury.