**5TH BEDFORD PINES APARTMENTS, LTD.,**
Plaintiff,

v.

**Sonya BRANDON and United States Department of Housing and Urban Development, Defendants.**

No. CIV.A.1:02–CV–1036–RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 13, 2003.

Edgar S. Mangiafico, Jr., Duncan & Mangiafico, Atlanta, GA, Counsel for Plaintiff.

Michelle Harris Jordan, Elena Mushkin, Georgia Law Center for the Homeless, Atlanta, GA, Counsel for Defendant, Sonya Brandon.

Mary Christine Roemer, Office of United States Attorney, Northern District of Georgia, Atlanta, GA, Counsel for Defendant, Dept. of Housing and Urban Development.

## ORDER

STORY, District Judge.

This case was originally filed in the Magistrate Court of Fulton County, Georgia, by a landlord, 5th Bedford Pines Apartments, Ltd. ("Bedford Pines") against a tenant, Sonya Brandon. Defendant U.S. Department of Housing and Urban Development ("HUD") was added as a necessary party, after which HUD removed the case to this Court. Now before the Court is HUD's Motion to Dismiss [4–1].

## I. Background

### A. Factual History

The following facts are undisputed. This case began as a landlord-tenant eviction proceeding in the Magistrate Court of

Fulton County, Georgia. The plaintiff-landlord, Bedford Pines, sought to evict the defendant-tenant, Brandon, pursuant to Georgia's summary eviction procedures. Brandon held a lease under the Section 8 Substantial Rehabilitation ("Sub Rehab") Program administered by the U.S. Department of Housing and Urban Development ("HUD"). As described in more detail below, the Sub Rehab Program allows tenants to pay reduced rent, while HUD makes housing assistance payments to project owners that make up the difference between the full rent and the tenant's reduced rent. This program requires tenants to recertify their income annually to remain eligible for their reduced rent obligations. If a tenant fails to recertify, the landlord may terminate the tenancy.

Pursuant to state law, Bedford Pines filed a Writ of Possession against Brandon. The Magistrate Court found that Brandon had violated her Section 8 lease by failing to recertify her income. *Fifth Bedford Pines Apartments Ltd. v. Brandon*, No. 01–ED–076511 (Mag. Ct. of Fulton County, Ga. Oct. 25, 2001). The court entered a final judgement against Brandon for $2,205.00 (the market value of her unpaid rent), plus costs and interest. *Id.* The court further ordered that in the event of an appeal, Brandon must pay the full judgment plus $735 per month-the market value of her lease-into the court's registry. *Id.* Brandon then filed a "Motion to Determine the Amount to Be Paid into Court," arguing that her HUD-subsidized monthly rent was only $109 per month, and that the amount owed and required during appeal should reflect her original obligation.

Thereafter, the magistrate court issued an order stating that it needed to determine whether HUD was required to pay the rent subsidy into the court's registry pending final adjudication of Brandon's eviction on appeal, and inviting Brandon to move the court to add HUD as a necessary party. Brandon so moved, and the magistrate court entered an order joining HUD. HUD removed the case to this Court and filed the pending Motion to Dismiss.

## B. Statutory and Regulatory Framework

The U.S. Department of Housing and Urban Development ("HUD") administers the Section 8 Program pursuant to the U.S. Housing Act of 1937, 42 U.S.C.A. § 1437 *et seq.* (West 1994 & Supp.2002). This program was established "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing ...." *Id.* § 1437f(a). Bedford Pines participates in the Section 8 Sub Rehab Program, the regulations for which are codified at 24 C.F.R. §§ 5, 881 (2002). This program provides project-based assistance to owners of housing who enter into contracts with HUD or a Public Housing Authority.[1] 24 C.F.R. § 888.201. Under the Program, participants make rental payments ("tenant rent") based on their income and ability to pay. *See* 24 C.F.R. §§ 5.628, 5.624 (describing calculation of tenant rent). HUD makes housing assistance payments to owners to make up the difference between the tenant rent and the total amount of rent for the housing unit. *Id.* § 881.501(d).

---

1. Project-based assistance is distinguishable from tenant-based assistance. Whereas project based assistance focuses on particular housing projects, tenant-based assistance provides vouchers to tenants who may choose approved housing. *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 161 n. 2; *see* 24 C.F.R. § 982 *et seq.* (setting forth regulations for Section 8 Tenant–Based Assistance).

Owners who participate in the Sub Rehab program enter into Housing Assistance Payment ("HAP") Contracts with HUD. HAP Contracts address how subsidy payments will be claimed and made. In this case, section 1.3b(1) of the contract states:

The Government hereby agrees to make housing assistance payments on behalf of Families for the Contract Units, to enable such Families to lease Decent, Safe, and Sanitary housing pursuant to section 8 of the Act. Such housing assistance payments shall equal the difference between the Contract Rents for units leased by Families and the portion of such rents payable by Families as determined by the Owner in accordance with schedules and criteria established by the Government.

(HUD's Mot. to Dismiss Ex. 4 (HAP Contract § 1.3b(1) Nov. 8, 1978).) The Contract further requires that "the Owner shall submit monthly requests to the Government for housing assistance payments." (*Id.* § 1.6f(1).)

The Sub Rehab regulations assign most of the administration of the Program to project owners. *See, e.g.,* 24 C.F.R. § 880.601(b) (providing owner is responsible for "all management functions," including reexamination and verification of family income).[2] At least annually, the owner must "conduct a reexamination and redetermination of family income and composition." *Id.* § 5.657(b). The family must supply any information requested by the owner of HUD for use in the annual reexaminations. *Id.* § 5.659(b)(2).

If a tenant fails to recertify her income, a project owner must comply with the requirements in HUD Handbook 4350.3:

5–15. *FOR FAILURE TO RECERTIFY.* If the owner sends the notices required by paragraph 5–6 [Recertification Notices] or 5–13 [Tenant Failure to Supply Interim Reports] ... and the tenant still does not supply the required recertification information, the owner must give the tenant a notice of intent to terminate assistance.... The notice must clearly advise the tenant that the assistance will be canceled unless the tenant meets with the owner's representative and supplies the required information within 10 calendar days of the date of the notice....

.　　　.　　　.　　　.　　　.

b. If the tenant does not meet with the owner and supply required information within 10 calendar days of the owner's notice of intent to terminate, the owner may stop assistance.

* 1. Following an action in 5–15(b), if the tenant meets with the owner after the 10–day period, but by the end of the calendar month, the owner may recertify the tenant and continue assistance.

(HUD's Mot. to Dismiss Ex. 5 (HUD Handbook 4350.3 ¶ 5–15).) Not only may the owner discontinue assistance in the event of a tenant's failure to recertify, such failure also constitutes a material breach of the tenant's lease and justifies termination of the tenancy. *See generally* 24 C.F.R. § 880.607 (describing termination of tenancy).

## II. Standards for 12(b)(1) and 12(b)(6) Motions to Dismiss

HUD removed this case to federal court pursuant to 28 U.S.C. §§ 1441 and

---

**2.** The management provisions of 24 C.F.R. § 880 Subpart F apply to the Sub Rehab program. *See* 24 C.F.R. § 881.601.

1442(a)(1). In its Motion to Dismiss, HUD argues that this Court lacks subject matter jurisdiction and that Brandon has failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(1), (6). Because of the unusual procedural history of this case, the alignment of the parties is not altogether clear.[3] Bedford Pines has not participated in this case following HUD's removal, and for purposes of the pending Motion, the functional relationship between Brandon and HUD is that of plaintiff and defendant. Brandon has not filed a complaint against HUD, but her "Motion to Add HUD as a Necessary Party" asserts that HUD is obligated to make housing assistance payments into the magistrate court's registry to make up the difference between her tenant rent and the full rent ordered by the court. While not a technically proper complaint, the Motion to Add HUD generally sets forth a claim for relief, a statement alleging Brandon is entitled to relief, and a statement arguing the amount to which she is entitled. *See* Fed.R.Civ.P. 8 (general rules of pleading). Further, both parties have treated the Motion to Add HUD as a complaint for purposes of the Motion to Dismiss; thus, the Court does the same. *See* Fed.R.Civ.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

 Rule 12(b)(1) attacks on subject matter jurisdiction can come in two forms. "Facial attacks" require the court to evaluate the complaint to see whether the plaintiff has sufficiently alleged a basis for sub-

ject matter jurisdiction; the allegations are taken as true for purposes of the motion. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.,* 104 F.3d 1256, 1261 (11th Cir.1997); *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990). "Factual attacks" challenge subject matter jurisdiction in fact, irrespective of the pleadings. *Garcia,* 104 F.3d at 1261.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (quoting *Lawrence,* 919 F.2d at 1529). The attack in this case is predominantly factual.

 When factual attacks on subject matter jurisdiction also implicate an element of the cause of action, "the proper course of action" is "to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case ...." *Lawrence,* 919 F.2d at 1529 (quoting *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir. May 1981)[4]); *Ivey v. United States,* 873 F.Supp. 663, 668 (N.D.Ga.1995). Jurisdiction is inextricably intertwined with the merits where a decision on one would effectively decide the other. *Lawrence,* 919 F.2d at 1529. In

---

**3.** This case appears to present a number of procedural infirmities. For purposes of the Motion to Dismiss, however, the Court addresses the issues currently before it.

**4.** The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

such cases, a 12(b)(1) motion is essentially converted into a 12(b)(6) motion or a 56(b) motion for summary judgment. *Ivey*, 873 F.Supp. at 668.

■ Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. In considering whether to grant or deny such a motion, the Court may ordinarily look only to the pleadings. Fed.R.Civ.P. 12(b). However, documents attached to a complaint or referenced therein may be considered. *Fed. Deposit Ins. Corp. v. Young*, 732 F.Supp. 111, 113 (N.D.Ga.1990); *see* Fed.R.Civ.P. 10(c). The pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Conner v. Tate*, 130 F.Supp.2d 1370, 1373 (N.D.Ga.2001). Thus, a motion to dismiss should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Linder v. Portocarrero*, 963 F.2d 332 (11th Cir.1992).

## III. Discussion

■ HUD challenges jurisdiction on two factual grounds.[5] First, it argues that Brandon's claim is against the United States such that sovereign immunity bars jurisdiction. This argument is not inter-twined with the merits of the case and so the Court treats it as a factual 12(b)(1) attack on subject matter jurisdiction. Second, HUD contends that this Court does not have Little Tucker Act jurisdiction because Brandon is not an intended third-party beneficiary of the HAP Contract. This argument implicates the merits of Brandon's claim because it necessarily delves into the terms of the HAP Contract. Thus, the Court treats this second argument according to the standards of Rule 12(b)(6). These arguments are addressed in turn.

### A. Sovereign Immunity

■ Brandon contends that HUD is amenable to suit under the limited waiver of sovereign immunity set forth in 42 U.S.C.A. § 1404a (1994). According to that provision, "[t]he Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended [42 U.S.C.A. § 1437 *et seq.*] ...." HUD, however, argues that it is only a nominal party and that the suit is in reality a suit against the United States.

■ The United States is immune from suit unless it waives that immunity. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The United States' consent to suit is a jurisdictional prerequisite. *Mitchell*, 463 U.S. at 212, 103 S.Ct. 2961. While Brandon names HUD rather than the United

---

5. In its Motion, HUD makes the facial argument that the "complaint," that is, the Motion to Add HUD, fails because it does not include a jurisdictional statement. (HUD's Mot. to Dismiss at 20.) The Court agrees with Brandon's response that she should not be strictly held to the Federal Rules of Civil Procedure with respect to a document filed in a state magistrate court. Moreover, HUD's factual challenge supplies ample grounds for ruling on the Motion.

States as a party to this action, the nominal classification attached to a party is not dispositive for sovereign immunity inquiries. *See Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) (inquiry focuses on effect on public treasury). Instead, the nature of the relief sought is the guiding factor in determining whether a suit is against an agency or the United States itself. To avoid the bar of sovereign immunity, "any judgment for the plaintiff must be recoverable from funds in the possession and control of the Secretary that are severed from Treasury funds and Treasury control." *Indus. Indem., Inc. v. Landrieu,* 615 F.2d 644, 646 (5th Cir.1980); *see Mann v. Pierce,* 803 F.2d 1552, 1557 (11th Cir.1986) (damages must be payable from HUD's general insurance fund to overcome immunity).

In *Industrial Indemnity,* for example, the Fifth Circuit examined whether a suit brought against the Secretary of HUD pursuant to the National Housing Act ("NHA") was barred by sovereign immunity. 615 F.2d at 645. The plaintiff's claim was based on HUD's having insured a construction project under the NHA; the insured mortgage was an obligation of HUD's General Insurance Fund ("GIF"), which was established by the NHA. *Id.* at 646 n. 5. The court concluded that the suit was against the Secretary of HUD rather than the United States because a judgment against the Secretary would be paid out of money in the GIF, which was "a separate fund in the control and possession of the Secretary." *Id.* at 646 (citing Nat'l Housing Act, 12 U.S.C. §§ 1735(a), (c), (d)); *see also Mann v. Pierce,* 803 F.2d 1552, 1557–58 (11th Cir.1986) (same result where plaintiffs sought damages pursuant to NHA that were payable from GIF).

In contrast, courts examining claims under the U.S. Housing Act have concluded

that those funds are not within the separate control and possession of the Secretary. Several courts have distinguished *Industrial Indemnity* on this basis. *E.g., Fryar v. Kemp,* 774 F.Supp. 1033, 1035 (W.D.La.1991). In *Fryar,* for example, the plaintiff had leased two apartment buildings to a public housing authority, which received section 8 subsidy payments from HUD under an annual contributions contract pursuant to the U.S. Housing Act. *Id.* at 1034–35. The plaintiff sued HUD, and the court held that it lacked jurisdiction because the suit was in reality against the United States. *Id.* at 1035. The court reasoned that unlike *Industrial Indemnity,* an adverse judgment would be paid out of the public treasury rather than the GIF. *Id.* While the GIF was established by a statute, the funds for annual contributions contracts came from the public treasury. *See id.* (citing 42 U.S.C. § 1437c(c)(7)(B)). Accordingly, the court did not have subject matter jurisdiction to hear the case. *Id.; see also Carlyle Gardens v. Del. State Hous. Auth.,* 659 F.Supp. 1300, 1306–07 (D.Del.1987) (holding suit to recover housing assistance payments from HUD was in reality against the United States and distinguishing GIF in *Industrial Indemnity* ); *Portsmouth Redevelopment & Hous. Auth. v. Pierce,* 706 F.2d 471, 473 (4th Cir.1983) (suit brought against HUD under U.S. Housing Act was in reality against United States because there was no separate fund from which judgment would be paid).

Here, the source of the funds for the contract between HUD and Bedford Pines is Congressional appropriations, as authorized by amendments to the U.S. Housing Act:

Sec. 524. Renewal of expiring project-based section 8 contracts

(a) In general.-

(1) Renewal.-Subject to paragraph (2), upon termination or expiration of a contract for project-based assistance under section 8 . . . the Secretary shall, at the request of the owner of the project and *to the extent sufficient amounts are made available in appropriation Acts,* use amounts available for the renewal of assistance . . . .

Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, Pub.L. No. 106–74, § 531, 113 Stat. 1047, 1109 (2000) (codified at ⋅ 42 U.S.C.A. § 1437f note (West Supp.2002)) (emphasis added). As this provision illustrates, funding for the section 8 program does not come from a specific fund like the GIF in *Industrial Indemnity.* Instead, as in *Fryar,* there is no separate fund for the payment of section 8 expenses that is within HUD's separate control. 774 F.Supp. at 1035. While appropriated funds may be allocated to the various programs that HUD administers, mere allocation does not convert funds that are a part of the Treasury into funds in the possession and control of the Secretary. *See Portsmouth Redevelopment,* 706 F.2d at 473 (rejecting allocation argument). Because Brandon seeks relief that would be paid from general funds, the Court concludes that this is a case against the United States. Accordingly, the limited waiver of sovereign immunity set forth in 42 U.S.C. § 1404a is inapplicable.

## B. Jurisdiction pursuant to the Little Tucker Act

Brandon argues that even if her claim is against the United States, this Court has subject matter jurisdiction pursuant to the Little Tucker Act. The Little Tucker Act provides a waiver of immunity as well as a jurisdictional grant to this Court if certain conditions are met.[6] *See* 28 U.S.C.A. § 1346(a)(2); *Fryar v. Kemp,* 774 F.Supp. 1033, 1034–35 (discussing Tucker Act); *Carlyle Gardens Co. v. Del. State Hous. Auth.,* 659 F.Supp. 1300, 1307(same); *cf. Ivey v. United States,* 873 F.Supp. 663, 670–71 (finding no jurisdiction under Tucker Act). Under the Act, district courts have concurrent jurisdiction with the U.S. Court of Federal Claims over: (1) claims against the United States; (2) not exceeding $10,000; and (3) that are "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, for liquidated or unliquidated damages not sounding in tort . . . ." 28 U.S.C.A. § 1346(a)(2). Brandon's claim meets the first two requirements; at issue is whether she has a claim sounding in contract.[7]

The parties agree that Brandon is not in privity of contract with HUD. However, Brandon argues that she is an intended third-party beneficiary of the contract entitled to bring a Little Tucker Act claim. Federal common law recog-

---

6. The Tucker Act waives sovereign immunity in some suits against the United States. 28 U.S.C.A. § 1346(a) (West 1993 & Supp.2002) is commonly known as the "Little Tucker Act," and grants district courts concurrent jurisdiction with the U.S. Court of Federal Claims under certain circumstances. 28 U.S.C.A. § 1491 (West Supp.2002) is commonly known as the "Big Tucker Act," and grants jurisdiction in the U.S. Court of Federal Claims. *Ivey v. United States,* 873 F.Supp. 663, 670 n. 4 (N.D.Ga.1995).

7. Brandon does not argue that she has an implied cause of action under the U.S. Housing Act. *See Smith v. Wash. Heights Apartments, Ltd.,* 794 F.Supp. at 1144 (rejecting such argument). Further, as described below, the U.S. Housing Act affords her no relief.

nizes the ability of third parties to sue on a contract that was intended for their benefit. *Roberts v. Cameron–Brown Co.*, 556 F.2d 356, 362 (5th Cir.1977); *Nat'l Leased Hous. Ass'n v. United States*, 32 Fed. Cl. 454, 462 (Fed.Cl.1994); *see German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 57 L.Ed. 195 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit."). Where the circumstances indicate that the promisee intended to give the beneficiary the benefit of the promised performance, the beneficiary may sue on the contract. *Roberts*, 556 F.2d at 362. In other words, the promisee must have intended that the beneficiary have an enforceable right. *Id.* Focusing on the intent of the parties necessitates a case-by-case analysis that takes into consideration the language of the contract and the circumstances of its formation. *See Aristil v. Hous. Auth. of City of Tampa*, 54 F.Supp.2d 1289, 1295–96 (M.D.Fla.1999) (evaluating contract language and statutory scheme and concluding plaintiffs were not third-party beneficiaries of HUD contract under § 1437d).

Courts are split as to whether section 8 tenants are intended third-party beneficiaries of HAP contracts. *Compare Holbrook v. Pitt*, 643 F.2d 1261, 1270–73 (7th Cir. 1981) (holding § 1437f tenants are intended third-party beneficiaries), *with Perry v. Hous. Auth. of Charleston*, 664 F.2d 1210, 1218 (4th Cir.1981) (holding § 1437f plaintiffs are merely incidental third-party beneficiaries). The Eleventh Circuit has not resolved this question; however, district courts within the Circuit have uniformly held that section 8 tenants are at most incidental beneficiaries of such contracts. *See Hill v. Ogburn*, 812 F.2d 679, 681 (11th Cir.1987) (declining to consider whether tenants were intended third-party beneficiaries of annual contributions contracts); *Aristil*, 54 F.Supp.2d at 1295–96 (concluding plaintiffs were not third-party beneficiaries of HUD contract under § 1437d); *Smith v. Wash. Heights Apts., Ltd.*, 794 F.Supp. 1141, 1144 (S.D.Fla.1992) ("The Court simply does not believe that the parties to the HAP contracts intended for the tenants to have an enforceable right to bring suit under a third party beneficiary for redress of the types of grievances raised in this case."); *Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*, 792 F.Supp. 1566, 1573 (S.D.Fla.1992) (holding low-income tenants are not beneficiaries for purposes of enforcing contracts between HUD and housing operators). *Compare Roberts v. Cameron–Brown Co.*, 556 F.2d 356, 362 (5th Cir. 1977) (holding HUD handbook did not create contract between HUD and private mortgagees of which mortgagors would be third-party beneficiaries).

Brandon neither cites nor distinguishes any of the authority within this Circuit holding that tenants are not intended beneficiaries of HUD contracts. However, she emphasizes that the stated purpose of the HAP Contract here is to aid lower-income families in obtaining a decent place to live. Indeed, the contract frequently states HUD's purposes: "The Government hereby agrees to make housing assistance payments on behalf of Families for the Contract Units, to enable such Families to lease Decent, Safe, and Sanitary housing pursuant to section 8 of the Act." (Def.'s Mot. to Dismiss Ex. 4 § 1.3b(1) (HAP Contract Nov. 8, 1978).) "The purpose of this Contract is to provide housing assistance payments on behalf of Eligible Families ('Families') leasing decent, safe and sanitary units from the Owner." (*Id.* Ex. 4

(Section 524(a) Contract at 1).) Further, the contract recites that it is entered into pursuant to the U.S. Housing Act of 1937 and its amendments. (*Id.*) This language points the Court to the purposes of section 8. *See Holbrook,* 643 F.2d at 1271 n. 18 (reasoning that where contract references section 8 program, legislative history and purpose of program are germane to third-party beneficiary analysis). Section 1437f begins with the following statement: "For the purpose of aiding low-income families in obtaining a decent place to live and promoting economically mixed housing, assistance payments may be made with respect to existing housing in accordance with this section." 42 U.S.C.A. § 1437f(a).

■■■■ The Court acknowledges the important purposes for which section 8 was established. However, even if the Court were to hold that Brandon is an intended third-party beneficiary of the HAP Contract, she fails to state a claim upon which relief can be granted because she is bound by the contract's terms.[8] A third-party beneficiary can enforce a contract only as written. *Deerman v. Fed. Home Loan Mortgage Corp.,* 955 F.Supp. 1393, 1405 (N.D.Ala.1997). The HAP Contract provides, "[t]he Government has not assumed any obligation for the amount of rent payable by any Family .... The financial obligation of the Government is limited to making housing assistance payments on behalf of Families in accordance with this Contract." (Def.'s Mot. to Dismiss Ex. 4 § 1.6f(1).) Nothing in the Contract requires HUD to continue making payments when a tenant has failed to recertify her income. Instead, the Contract

puts the responsibility for acquiring housing assistance payments on the owner. (*See id.* ("the Owner shall submit monthly requests to the Government for housing assistance payments").)

■■■ Moreover, the Contract states that it shall be construed in accordance with applicable statutory requirements and HUD regulations. (*Id.,* Section 524(a) Contract ¶ 10.) As described above, a tenant's failure to recertify may ultimately justify an eviction proceeding. The magistrate court entered a final order in which it found that Brandon had failed to recertify and owed Bedford Pines past rent. The propriety of this finding is not before the Court, and the Court finds nothing in the statutory or regulatory framework that would require HUD to make housing assistance payments on Brandon's behalf under the circumstances presented here. In her Motion to Add HUD, Brandon argues that HUD is required to make payments under 24 C.F.R. § 983.211 (2002). That regulation requires housing assistance payments to continue if an owner has commenced a process to evict the tenant; however, the regulation is not applicable here because it governs tenant-based voucher programs, not the Sub Rehab Program. Nor is Brandon's reliance on HUD Handbook 4350.3 availing. While a tenant who recertifies within a certain time may be eligible for retroactive housing assistance payments once recertification is complete, an owner may charge market rent until the tenant submits the requested information. (Brandon's Resp. to HUD's Mot. to Dismiss Ex. A (HUD Handbook 4350.3 § 5–7).) Further, the same Handbook allows

---

**8.** The Court thus follows the procedure outlined earlier for resolving factual Rule 12(b)(1) motions that are intertwined with the merits. The Court presumes that jurisdiction exists (here, under the Little Tucker Act) and treats the motion according to the standards of Rule 12(b)(6).

an owner to terminate assistance for failure to recertify; even though assistance may be subsequently reinstated, there is no provision that entitles a tenant to retroactive reinstatement of a terminated subsidy.

Because nothing in the HAP Contract requires HUD to make payments on Brandon's behalf, Brandon has failed to state a claim under her third-party beneficiary theory. Moreover, the section 8 statutory framework and applicable regulations illustrate that HUD owes no duty to make payments into the court's registry in these circumstances. It thus appears "beyond doubt" that Brandon can prove no set of facts that would entitle her to relief against HUD. *Conley v. Gibson,* 355 U.S.

at 45, 78 S.Ct. 99. Accordingly, HUD's Motion to Dismiss [4–1] is hereby **GRANTED**. Because there are no other issues before this Court, the Clerk is hereby **DIRECTED** to remand this case to the Magistrate Court of Fulton County, Georgia.